TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00376-CR







Robert Edward Kennedy, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF BEXAR COUNTY, 186TH JUDICIAL DISTRICT


NO. 97-CR-2670-B, HONORABLE SAM KATZ, JUDGE PRESIDING







 A jury convicted Robert Edward Kennedy of robbery and thereby implicitly
acquitted him of aggravated robbery. The jury assessed punishment at eight years in prison. By
three points of error, Kennedy contends that his trial counsel was ineffective for failing to keep
prior written statements suppressed, that the court reporter failed to transcribe the text of an
audiotape and the audio portion of a videotape, and that the district court erred by ignoring a
stipulation of inadmissibility and admitting a videotape. We will affirm the judgment.


BACKGROUND



 Following is a summary of the testimony from Borg Hansen, the complainant. We
will note parenthetically where Kennedy's written statements diverge significantly or add details
unknown or unexplained by Hansen.

 Hansen testified that he met and conversed with Jessica Longoria and her
boyfriend, Charles Cameron, at a car wash in San Antonio. They discussed Hansen's part-time
work as a clown and he gave her his business card. Hansen also had the impression that Longoria
was interested in him personally, though not necessarily sexually, so he invited her to call him
whenever she wanted. (Kennedy said that Longoria said Hansen offered her $75 to sleep with
him, so she decided to teach him that older men should not hit on young women; Hansen was in
his mid-sixties and Longoria, who told Hansen she was nineteen, was seventeen.)

 Soon thereafter, Longoria called Hansen and arranged that she and her friend Carla
would meet him at a restaurant. The women told him they were lovers, and offered to have sex
with him for $105. Hansen drove the women to his house. The girls toured the home while
Hansen mixed them drinks; he saw only Longoria take a drink. They all went to the master
bedroom where Hansen, with the women's consent, played a pornographic videotape on the
television. Hansen said he never touched the women. (Kennedy said Longoria said Hansen tried
to put his hands inside her clothes.) Shortly thereafter, though, the women left the bedroom and
started ransacking the house. One ran out of the house and looked at the address. Regretting his
invitation, Hansen asked the women to get into his van so he could return them to the restaurant. 
As he drove, they offered to go to a hotel with him, but he declined. They asked him for money,
but he declined. As they got out, they told him they would blackmail him, tell his wife (who was
at work), and come back to get him.

 About an hour and a half later, the women came back to Hansen's house with
Cameron. Hansen was working in his garage when they arrived. Longoria said she had left her
cigarette lighter, so Hansen went into the house to look for it. Cameron followed him with a
knife. Hansen tried to take the knife away, but Cameron hit him in the face and body and
knocked him down.

 Hansen said he feared for his life because Longoria was "mean to him," hit him,
wanted to tape him up and was holding a knife. He begged them not to kill him and offered them
his wallet. They took sixty dollars in cash and his credit cards. He tried to escape through the
front door, but Cameron caught him and stabbed him superficially in his back.

 Hansen asked to go to the kitchen to get a towel to control his bleeding; he was
bleeding profusely because he takes a blood thinner. At some point, Hansen saw Kennedy taking
whiskey bottles from the bar in his house and saw an unfamiliar car in the garage. 

 Eventually, they all went upstairs. Longoria started taking Hansen's wife's jewelry
and Kennedy picked up the television. Cameron made Hansen go into his closet. Hansen found
his loaded revolver under some clothes and turned on the intruders. Cameron and Longoria still
had knives in their hands and approached him, Longoria first. He told them to drop the knives,
but they did not. Longoria continued to approach without talking and with her knife pointed at
him, so he shot her. Cameron then dropped his knife.

 Hansen ordered Kennedy to drop the television and told them all to leave his house. 
They complied. Cameron carried Longoria, who was still alive at that time, to the car. Kennedy
drove the car away. When they left, Hansen called 911. (Kennedy dropped the others off at a
Texaco station so they could seek help for Longoria and so Kennedy could get rid of the stolen
items. Longoria died.) Police found Longoria's body in the Texaco station parking lot; they
videotaped and photographed her in that setting.


DISCUSSION


 By his first point of error Kennedy contends that his counsel provided ineffective
assistance because he failed to object to the introduction of statements he gave to police that the
district court had ruled inadmissible before the trial. We first examine whether counsel's conduct
failed to meet an objective standard for reasonable performance and whether that failure deprived
the appellant of a fair trial. Strickland v. Washington, 466 U.S. 668, 687-88; Jackson v. State,
973 S.W.2d 954, 956 (Tex. Crim. App. 1998). We look at the totality of the representation. Ex
parte Carillo, 687 S.W.2d 320, 324 (Tex. Crim. App. 1985); Mayhue v. State, 969 S.W.2d 503,
510 (Tex. App.--Austin 1998, no pet.). There is a strong presumption that counsel provided
adequate assistance and made all the significant decisions in the exercise of reasonable
professional judgment. Strickland, 466 U.S. at 690. Counsel is allowed wide latitude within
reasonable professional standards to make tactical decisions. Id. We generally will not speculate
as to trial strategy. Mayhue, 969 S.W.2d at 511. The representation need not be free of error. 
Ingham v. State, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984). Though numerous instances of
failing to object to harmful inadmissible evidence could show ineffective assistance, an isolated
failure does not necessarily render counsel ineffective. See Weathersby v. State, 627 S.W.2d 729,
730 (Tex. Crim. App. 1982). Finally, the client must show a reasonable probability that, but for
counsel's errors, the result of the proceedings would have been different. Mayhue, 969 S.W.2d
at 511.

 Proving counsel was ineffective is particularly difficult without an evidentiary
hearing dedicated to the issue of counsel's effectiveness. "In most instances, the record on direct
appeal is inadequate to develop an ineffective assistance claim." Ex parte Torres, 943 S.W.2d
469, 475 (Tex. Crim. App. 1997); see also Oldham v. State, 977 S.W.2d 354, 363 (Tex. Crim.
App. 1998). In Oldham, the court held that, where the alleged derelictions primarily are errors
of omission rather than commission, collateral attack may be needed for a thorough examination
of the alleged ineffectiveness. Oldham, 977 S.W.2d at 363 (quoting Ex parte Duffy, 607 S.W.2d
507, 513 (Tex. Crim. App. 1980)).

 Kennedy filed a motion to suppress the admission of two written statements he gave
to police. He contended that the statements were taken without his counsel's presence despite his
invocation of the right of counsel and the presence of counsel in the police station. A few days
after a hearing on the motion to suppress, the district court signed an order suppressing both
statements.

 The State nevertheless offered both statements at trial. When the State offered the
statements during trial, Kennedy's attorney affirmatively stated that he had no objection to the
admission of the statements. Hearing no objection, the district court admitted the statements. 
Kennedy's attorney then cross-examined the interrogating officer, apparently seeking to show the
jury that the statements were not given voluntarily.

 Even assuming, without deciding, that Kennedy's counsel was ineffective for not
trying to enforce the previous suppression order, we conclude that Kennedy has not satisfied the
Strickland test because there is no reasonable probability that the result of the trial would have
been different without the statements. The district court charged the jury as follows:


 Our law provides that a person commits the offense of robbery if, in the
course of committing theft, as that term is hereinafter defined, and with intent to
obtain or maintain control of property of another, he intentionally or knowingly
threatens or places another in fear of imminent bodily injury or death.


* * *



 "Theft" as used herein is the unlawful appropriation of the corporeal
personal property of another, with the intent to deprive such person of said
property.


* * *



 Mere presence alone will not make a person a party to an offense. A
person is criminally responsible for an offense committed by the conduct of others
if acting with intent to promote or assist the commission of the offense he solicits,
encourages, directs, aids, or attempts to aid the other person or persons to commit
the offense.



Even without Kennedy's statements, the jury had sufficient evidence before it to convict. Hansen
testified that the two men and women removed Hansen's belongings without his consent and while
putting him in fear for his life. Hansen also testified that Kennedy entered Hansen's house after
the other three robbers; that Kennedy did not speak to him, threaten him, or wield a weapon; that
Kennedy removed items, including liquor, from his home; and that Kennedy drove the getaway
car. Further, the jury had the testimony of the investigating officers who found the getaway car
and arrested a distressed Kennedy after he admitted he had recently been out with a man and two
women, one of whom had been shot. The jury also had the testimony of the officers who saw
Hansen's wounds and his ransacked home. Finally, the jury heard the testimony of the police
officer who found Cameron's wallet and Hansen's property inside Kennedy's car. The jury also
saw pictures of Kennedy's car and property, including a camera with Hansen's name and address
on it, power tools, and liquor.

 Kennedy's disputed statements did not add enough to affect the result. He
confirmed much of Hansen's testimony regarding the women's second visit and added details
regarding the activities and stated motivations of the foursome apart from what happened at
Hansen's house. Kennedy's statements differ in some details from Hansen's testimony--e.g.,
Kennedy said that Longoria had her hands extended to the side as she approached Hansen. 
Kennedy's statement also contains the additional information that he provided the knives Longoria
and Cameron used. As discussed above, however, the trial testimony of Hansen and the
investigating officers, together with the items from Hansen's house in Kennedy's trunk, provided
more than sufficient evidence to convict Kennedy. We find no reasonable probability that the
admission of Kennedy's statements changed the result of the trial. We overrule point one.

 By point of error three, Kennedy contends that the district court abused its
discretion in changing a previous ruling and admitting highly prejudicial evidence that the
prosecutor and defense counsel had previously stipulated was inadmissible. The disputed evidence
was a videotape of Hansen's house and the Texaco station parking lot. Kennedy's counsel
asserted and the prosecutor did not deny that they had an agreement to play part of the videotape,
but stop it at a point at which the parties agreed it became prejudicial and had little additional
probative value. The State nevertheless at trial asked to play the entire videotape. The district
court, noting that it had suppressed part of the videotape at Cameron's trial, opined that
intervening experience and education convinced him to reevaluate and admit the entire videotape
in Kennedy's trial. Kennedy complains that the State's offer violated the agreement not to play
the prejudicial parts of the tape, that the district court gave no adequate reason for not excluding
the tape as he had in the Cameron trial, and that admitting the entire tape was an abuse of
discretion because the risk of unfair prejudice and confusion substantially outweighed the
probative value of the tape.

 We find no merit in Kennedy's charge that the district court abused his discretion
in "changing a previous ruling." Kennedy is referring to a ruling in Cameron's separate trial. 
Though the district court was not required to explain the basis of his evidentiary rulings, he
explained that his understanding of the balancing test had changed with more experience and
education. We find no authority for the proposition that a trial court's evidentiary ruling in a trial
binds the court to exercise its discretion in the same manner in a subsequent trial. We find no
abuse of discretion in the act of exercising discretion differently than before.

 Nor do we find reversible error in the court's decision not to enforce the alleged
agreement between the State and Kennedy. The only clue the record offers as to the terms of the
agreement is this statement by Kennedy's counsel:


 First off, judge, I was told yesterday afternoon, we had a stipulation. This
takes me by surprise. The stipulation was this jury would be would [sic] shown
what the previous jury was shown, which would cut it off when it becomes
prejudicial. I would urge the Court, they have -- They have the means and ability
to show more photographs of the dead girl.


 This video, the purpose of going past the stipulated or the portion of tape
that goes to evidence gathering is, the sole purpose or its relevance is outweighed
by prejudicial value. We ask the Court to cut the tape off where we previously
talked about.



There is nothing in the record or the briefs to indicate where the tape was cut off in the previous
trial or where the parties agreed it became prejudicial; we therefore cannot adequately determine
the effect of any violation of the alleged agreement because we do not know the terms of the
agreement. Kennedy's counsel's comments indicate that the portions he considers prejudicial are
those that show Longoria's body. Any aspect of the videotape that showed Longoria's body
would not be prejudicial to Kennedy, because there is absolutely no indication in the record that
he had any role in her death. If anything, it might reduce sympathy for Hansen by emphasizing
the death he caused. We find no abuse of discretion in or harm from the district court's decision
to admit the full videotape. We overrule point of error three.

 By point of error two, Kennedy contends that the court reporter failed to follow the
requirement for transcription of audio or video exhibits played in court. The Uniform Format
Manual for Texas Court Reporters, paragraph 16.16, directs court reporters to transcribe the text
of audio and video recordings unless the trial court orders that no recording shall be made because
such recording is not feasible. Contending that the tape of Hansen's 911 call was difficult to
understand, defense counsel requested that either the tape be transcribed or the court admit a
transcription of the call from Cameron's trial. The court denied the request, finding the audiotape
was the best evidence of its own contents. Kennedy's attorney apparently did not specifically
request that the court reporter transcribe the audio portion of the videotape.

 The court reporter's failure to transcribe the audio portions of the tapes does not
require reversal. The tapes were played to the jury and admitted into evidence. There is no
indication that the court reporter had any special equipment or ability to understand the tapes
superior to the jurors or us. We find beyond a reasonable doubt that the absence of a transcription
of the tapes did not impinge on a substantial right or contribute to Kennedy's conviction or
punishment. (1) We find no reversible error.

 Kennedy argues (though not in the text of point of error two) that his trial counsel
was ineffective for not requesting that the court reporter transcribe the audiotape of the 911 call
and the audio portion of the videotape. Even assuming without deciding that counsel's failure to
request the transcription was ineffective, we find no reversible error. We fail to see how the
presence of the transcription within the court reporter's record would have resulted in a different
verdict when the videotape and the 911 tape were themselves played to the jury and admitted into
evidence. We have no reason to believe that any clarification of Hansen's statements to the 911
operator or the police officer's narration of the videotape would have altered the balance of the
evidence and changed the result of the trial. We overrule point two.


CONCLUSION


 Having overruled Kennedy's points of error, we affirm the judgment.



 


 Lee Yeakel, Justice

Before Justices Jones, Yeakel and Patterson

Affirmed

Filed: April 20, 2000

Do Not Publish
1. We are not faced with and expressly do not consider the situation in which tapes are played
for the jury, are not admitted into evidence, and are not transcribed either as an exhibit or as part
of the reporter's record.



ty
to show more photographs of the dead girl.


 This video, the purpose of going past the stipulated or the portion of tape
that goes to evidence gathering is, the sole purpose or its relevance is outweighed
by prejudicial value. We ask the Court to cut the tape off where we previously
talked about.



There is nothing in the record or the briefs to indicate where the tape was cut off in the previous
trial or where the parties agreed it became prejudicial; we therefore cannot adequately determine
the effect of any violation of the alleged agreement because we do not know the terms of the
agreement. Kennedy's counsel's comments indicate that the portions he considers prejudicial are
those that show Longoria's body. Any aspect of the videotape that showed Longoria's body
would not be prejudicial to Kennedy, because there is absolutely no indication in the record that
he had any role in her death. If anything, it might reduce sympathy for Hansen by emphasizing
the death he caused. We find no abuse of discretion in or harm from the district court's decision
to admit the full videotape. We overrule point of error three.

 By point of error two, Kennedy contends that the court reporter failed to follow the
requirement for transcription of audio or video exhibits played in court. The Uniform Format
Manual for Texas Court Reporters, paragraph 16.16, directs court reporters to transcribe the text
of audio and video recordings unless the trial court orders that no recording shall be made because
such recording is not feasible. Contending that the tape of Hansen's 911 call was difficult to
understand, defense counsel requested that either the tape be transcribed or the court admit a
transcription of the call from Cameron's trial. The court denied the request, finding the audiotape
was the best evidence of its own contents. Kennedy's attorney apparently did not specifically
request that the court reporter transcribe the audio portion of the videotape.

 The court reporter's failure to transcribe the audio portions of the tapes does not
require reversal. The tapes were played to the jury and admitted into evidence. There is no
indication that the court reporter had any special equipment or ability to understand the tapes
superior to the jurors or us. We find beyond a reasonable doubt that the absence of a transcription
of the tapes did not impinge on a substantial right or contribute to Kennedy's conviction or