**Ex parte Raymond TORRES.**

Nos. 72,358, 72,359.

Court of Criminal Appeals of Texas.
En Banc.

April 16, 1997.

470

Brian W. Wice, Houston, for appellant.

Mike Cook, Asst. District Attorney, Houston, Matthew Paul, State's Atty., Austin, for State.

Before the court en banc.

## OPINION

KELLER, Judge.

Applicant pleaded guilty without the benefit of a plea bargain to charges of aggravated kidnapping and aggravated sexual assault. The trial court assessed punishment, enhanced by two prior convictions, at fifty years confinement in each case, to run consecutively. No appeal was taken at that time. In 1993, applicant filed applications for post-conviction relief in these causes pursuant to the provisions of Article 11.07,[1] alleging among other things, that he was denied his right to appeal. This Court granted applicant out-of-time appeals in both convictions, noting that "[a]ll other requested relief is denied without prejudice." *Ex parte Torres*, Nos. 71,680 & 71,681 (Tex.Cr.App. delivered May 26, 1993). The Court of Appeals reformed the judgments to delete the cumulation orders, but otherwise affirmed the convictions. *Torres v. State*, Nos. 14–93–00603–CR & 14–93–00604–CR, 1995 WL 144547 (Tex.App.—Houston [14th Dist.], delivered March 30, 1995, no pets.).

In September 1995, applicant filed subsequent applications for habeas relief in the trial court challenging these same convictions for substantially the same reasons alleged in his prior writs.[2] The trial court found that these subsequent applications were filed after final disposition of Applicant's previously filed applications challenging these convictions. The trial court further found that the applications do not contain sufficient specific facts establishing that the claims *have not been* and could not have been presented in the previous applications; or that, by a preponderance of the evidence, no rational juror could have found applicant guilty beyond a reasonable doubt (emphasis given by trial court). Therefore, the trial court concluded that applicant was barred under the provisions of Article 11.07, Section 4(a), V.A.C.C.P., from having this Court consider the merits of the instant applications. The trial court also concluded that Applicant's claims were barred because they had been raised and rejected on direct appeal.[3] We filed and set these applications for submission to determine if Sec. 4(a) bars this Court from considering the merits of these subsequent applications and to determine whether applicant's claims are barred because they were raised and rejected on direct appeal. We hold that there is no bar to addressing the merits of applicant's claims, and we remand those claims for further proceedings.

## 1. § 4(a)

Article 11.07 § 4(a) provides:

Sec. 4. (a) If a subsequent application for writ of habeas corpus is filed after *final disposition* of an initial application challenging the same conviction, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:

(1) the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered appli-

---

1. All references to articles are to the Texas Code of Criminal Procedure unless otherwise provided.

2. Applicant alleges he was denied reasonably effective assistance of counsel because trial counsel failed to preserve for appellate review the denial of Applicant's request to represent himself at trial, and that counsel was ineffective in allegedly failing to advise applicant that his non-negotiated pleas of guilty waived his right to appeal the denial of Applicant's request to represent himself.

3. We subsequently remanded this cause for further factfinding. The trial court conducted an evidentiary hearing and made oral findings of fact on the record. We will address those findings later in this opinion.

cation filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt.

(Emphasis added). For a claim to be barred under § 4(a), it must be filed after the "final disposition" of an initial application. The trial court apparently assumed that a final disposition occurred when we granted the out-of-time appeal and "denied" all other relief without prejudice. We decide today, however, that a "final disposition," as contemplated by § 4(a), did not occur in the present case.

■■ Before addressing the meaning of the phrase "final disposition," contained in § 4(a), we must accurately characterize the nature of the disposition in the present case. In determining the nature of a disposition, we look beyond mere labels to the substance of the action taken. *State v. Young,* 810 S.W.2d 221, 222–223 (Tex.Crim.App.1991) (appealability of a trial court order); *State v. Moreno,* 807 S.W.2d 327, 332–333 (Tex.Crim. App.1991)(same). *See also Ex Parte Tarver,* 725 S.W.2d 195, 198–199 (Tex.Crim.App.1986) (whether probation revocation is administrative or judicial); *Ex Parte Gray,* 649 S.W.2d 640, 642 (Tex.Crim.App.1983)(whether relief sought is mandamus or prohibition). Although we stated that the other claims were "denied" without prejudice, the true effect of our disposition was to *dismiss* those claims. In our writ jurisprudence, a "denial" signifies that we addressed and rejected the merits of a particular claim while a "dismissal" means that we declined to consider the claim for reasons unrelated to the claim's merits. By granting relief on one claim and "denying" applicant's remaining claims "without prejudice," we indicated that we were not addressing the merits of those remaining claims. Moreover, because granting an out-of-time

appeal restores the pendency of the direct appeal, any remaining substantive claims would become premature, and hence, subject to dismissal. *See Ex Parte Brown,* 662 S.W.2d 3, 4 (Tex.Crim.App.1983)(no habeas jurisdiction while direct appeal is pending).

■■ The question remains whether the kind of dismissal presented here constitutes a "final disposition" under § 4(a). To answer that question, we must first determine whether the statutory language is ambiguous. If the language of a statute is not ambiguous, we must give effect to the plain meaning of its words unless doing so would lead to absurd results. *Boykin v. State,* 818 S.W.2d 782, 785–786 & 786 n. 4 (Tex.Crim. App.1991). When the language of a statute is ambiguous, we may look to extratextual factors for guidance in determining the statute's meaning. *Id.*

■■ The phrase "final disposition" appears in numerous statutes, both criminal and civil, but is rarely defined. The phrase is not defined in Article 11.07 and there is no global definition of the term in the Code of Criminal Procedure. The definition of or plain usage of the phrase "final disposition" appears to vary from one section of the Code to the next. For the narrow purpose of determining when probation fees are due, the relevant section defines "final disposition" as the placement of a defendant on probation. Article 42.12, § 19(d). In another section, a witness is considered to have disobeyed a subpoena if he does not attend court on any day "before the final disposition or continuance of a particular case." Article 24.06(1). This language appears to contemplate that a final disposition of the case includes *any* disposition, whether it is a dismissal without prejudice, a mistrial, or an adjudication on the merits. By contrast, the Interstate Agreement on Detainers Act appears to contemplate a "final disposition" as being either an adjudication on the merits or a dismissal of the pending charges with prejudice. Article 51.14, Article III(d).[4] Hence, the phrase "fi-

---

4. This section of the Act provides in relevant part:

Any request for final disposition made by a prisoner pursuant to Paragraph (a) hereof shall

operate as a request for final disposition of all untried indictments, informations, or complaints on the basis of which detainers have been lodged....If trial is not had on any

nal disposition" can have various meanings, ranging from situations in which a mere dismissal without prejudice will suffice to situations that require an adjudication on the merits. Unlike the statutes discussed above, we find no contextual clues in the language of Article 11.07 concerning the precise meaning of this phrase in § 4(a). We must therefore turn to extratextual factors to determine the statute's meaning.

■ The legislature has given some guidance concerning the extratextual factors we may examine in construing statutes. We may consider, among other matters, the

(1) object sought to be attained;

(2) circumstances under which the statute was enacted;

(3) legislative history;

(4) common law or former statutory provisions, including laws on the same or similar subjects;

(5) consequences of a particular construction;

(6) administrative construction of the statute; and

(7) title (caption), preamble, and emergency provision.

Tex. Gov't.Code, § 311.023.[5]

■ The legislative history is instructive. Senator Montford, the author of the bill that added § 4(a) to Article 11.07, stated on the Senate floor that the provision "adopts the abuse of the writ doctrine currently used in *federal practice* which limits an inmate to a one time application for writ of habeas corpus except, and I want to emphasize except, in exceptional circumstances." S.B. 440, April 19, 1995, Tape 1, Side 2 (emphasis

added).[6] In federal practice, a successive petition may be dismissed if:

(1) the judge finds that it fails to allege new or different grounds for relief *and* the prior determination was on the merits or,

(2) if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

Rule 9(b) governing 28 U.S.C. § 2254; Rule 9(b) governing 28 U.S.C. § 2255 (emphasis added and numbering inserted). *See also* 28 U.S.C. § 2244(a) & (b). An "abuse of the writ" under situation (2) occurs when the petitioner fails to show "cause and prejudice" for not raising the new claim in a prior petition. *McCleskey v. Zant,* 499 U.S. 467, 493–495, 111 S.Ct. 1454, 1469–71, 113 L.Ed.2d 517 (1991). While serving the same basic purpose—finality—the two situations above involve different considerations. *McCleskey v. Zant,* 890 F.2d 342, 346 (11th Cir.1989), *affirmed,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). The first situation is primarily designed to prevent a defendant from attempting to achieve a different outcome with a different judge on a claim already resolved against him while the second situation is designed to prevent harassment and delay. *Id.* An examination of federal abuse of the writ doctrine shows that Applicant's successive petition would not have been barred in federal court. Applicant's claims would not be barred under situation (1) because they were not resolved on the merits, and his claims would not be barred under situation (2) because situation (2) applies only to new claims, and applicant's claims were raised before.

---

indictment, information, or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing same with prejudice.

(Ellipsis inserted).

5. This provision is part of the "Code Construction Act," which applies to the Code of Criminal Procedure, at least to the extent it has been amended or reenacted by the 60th or subsequent legislature. Tex. Gov't Code § 311.002(2). *Pos-*

tell v. State, 693 S.W.2d 462, 464 (Tex.Crim.App. 1985); Barbee v. State, 432 S.W.2d 78, 82 (Tex. Crim.App.1968), cert. denied, 395 U.S. 924, 89 S.Ct. 1779, 23 L.Ed.2d 241 (1969).

6. While the floor discussion related expressly to capital cases, Senator Montford had explained in an earlier committee hearing that the subsequent writ provision applied to both capital and noncapital cases. S.B. 440, Senate Committee on Criminal Justice, March, 14, 1995, Tape 1, Side 1.

■ The purpose of the provision, as explained in the legislative history, also counsels against applying the successive writ language to dismissal cases like the present one. Representative Gallego, the House sponsor of the bill, emphasized the intent to limit a convicted person to "one bite at the apple":

> And we tell individuals that, everything that you can possibly raise the first time, we expect you to raise it initially, one bite of the apple, one shot....[Answering questions]. I think we'll have less filed, because what we're attempting to do here is to say, raise everything at one time. You get one bite of the apple. If you have to stick the kitchen sink in there, put it all in there. And, we will go through those claims, one at a time, and make a decision, but none of this, one—one—every week you file a new petition which is currently basically what happens.

House floor, S.B.440, May 18, 1995, Tape 166, Side A (ellipsis and bracketed material inserted). While the Legislature limited applicants to one bite of the apple, they clearly contemplated that that bite would be a full one. The recognized corollary to requiring an applicant to raise all of his claims at once is that every claim raised in that initial proceeding would be considered and decided.

■ Interpreting the phrase "final disposition", to mean the disposition of the entire writ by any method, would result in consequences seriously adverse to the Legislature's intent as expressed through the legislative history. Under the "any method" interpretation, a person who files his writ prematurely, while direct appeal is pending, would effectively lose his "bite of the apple" because his application would be dismissed, and a subsequent application would be dismissed based upon the filing of his prior, premature application. As a result, the merits of his claims would never be addressed. The consequences under an "any method" interpretation are even worse for a person in Applicant's position. Applicant did what the Legislature intended—he filed a number of different claims at once. One of those claims was found to be meritorious, resulting in the dismissal of his remaining claims *through no fault of his own.* The "any method" approach would prevent the renewal of these earlier, unaddressed claims, regardless of their merits, even though applicant did what the Legislature intended. The practical effect of such an approach would be to force an applicant to choose between litigating the merits of his writ of habeas corpus claims or regaining an appeal that he lost due to ineffective assistance of counsel. We do not believe the Legislature intended to force such a choice upon 11.07 applicants.

■ Given the Legislature's reliance upon federal abuse of the writ doctrine and their intent to give and limit applicants to "one bite of the apple," we believe that a "final disposition" of an initial writ must entail a disposition relating to the merits of all the claims raised. Dispositions relating to the merits should be labeled "denials" while dispositions unrelated to the merits should be labeled "dismissals," but, regardless of the label given to a previous disposition, we will look to the substance of that disposition to determine whether a subsequent writ is barred by § 4. A disposition is related to the merits if it decides the merits or makes a determination that the merits of the applicant's claims can never be decided. *See Hawkins v. Evans,* 64 F.3d 543, 547 (10th Cir.1995)(disposition is considered "on the merits" if the court refuses to determine the merits because of state procedural default). In the present case, only one of several claims in Applicant's initial application was decided on the merits (granting out-of-time appeal). The remaining claims were not decided on the merits nor was the refusal to decide the merits a determination that the merits could never be decided. Because we disposed of some of Applicant's claims for reasons unrelated to the merits, there was no final disposition of Applicant's initial writ and § 4 does not bar raising those claims in a subsequent writ.[7]

---

7. The trial court also relied upon *Ex Parte Twyman,* 716 S.W.2d 951, 952–953 (Tex.Crim.App. 1986) for the proposition that issues rejected in a first writ may not be considered in a second writ. However, in *Twyman,* the issues in the first writ had been rejected on the merits. *Id.*

## 2. Effect of direct appeal

■ Generally, a claim which was previously raised and rejected on direct appeal is not cognizable on habeas corpus. *Ex Parte Acosta,* 672 S.W.2d 470, 472 (Tex.Crim.App. 1984). *See also Ex Parte Schuessler,* 846 S.W.2d 850, 852 n. 6 (Tex.Crim.App.1993). However, this doctrine should not be applied where direct appeal cannot be expected to provide an adequate record to evaluate the claim in question, and the claim might be substantiated through additional evidence gathering in a habeas corpus proceeding. In most instances, the record on direct appeal is inadequate to develop an ineffective assistance claim. *Ex Parte Duffy,* 607 S.W.2d 507, 512–513 (Tex.Crim.App.1980). *See also Jackson v. State,* 877 S.W.2d 768, 772–773 (Tex.Crim.App.1994)(Baird, J. concurring; *Vasquez v. State,* 830 S.W.2d 948, 951 (Tex.Crim.App.1992))(Benavides, J. dissenting). Moreover, the inadequacy of the appellate record in these situations is due to the inherent nature of most ineffective assistance claims. The very ineffectiveness claimed may prevent the record from containing the information necessary to substantiate such a claim. *Duffy,* 607 S.W.2d at 513. Moreover, the trial record ordinarily does not reflect counsel's reasons for doing or failing to do actions of which the defendant complains. *Vasquez,* 830 S.W.2d at 951. While expansion of the record may be accomplished in a motion for new trial, that vehicle is often inadequate because of time constraints and because the trial record has generally not been transcribed at this point. *Jackson,* 877 S.W.2d at 772 n. 3. Further, mounting an ineffective assistance attack in a motion for new trial is inherently unlikely if trial counsel remains counsel during the time required to file such a motion. Hence, in most ineffective assistance claims, a writ of habeas corpus is essential to gathering the facts necessary to adequately evaluate such claims.

■ The present case is an example of the inadequacies of direct appeal in evaluating ineffective assistance claims. It is well-settled that, when there is not a plea bargain, a knowing and voluntary guilty plea waives all nonjurisdictional defects, including deprivations of federal due process, occurring before the plea. *Flowers v. State,* 935 S.W.2d 131, 131–33 (Tex.Crim.App.1996). On direct appeal, applicant raised several claims, including that the trial court erred in denying him his right to represent himself and that his guilty plea was involuntary because it was conditioned upon the promise of an appeal. The Court of Appeals concluded that Applicant's plea was knowing and voluntary, and therefore, he waived the trial court's failure to grant him permission to represent himself. *Torres,* slip op. at 5. The court reasoned that there was insufficient evidence in the record "that he, his trial counsel, and the trial judge were laboring under a false impression that [applicant] could appeal the judge's denial of his request to represent himself." *Id.,* slip op. at 4. The court therefore refused to address whether applicant was denied his right to represent himself. *Id.,* slip op. at 5. Because the direct appeal record contained insufficient evidence to evaluate the ineffective assistance issue, we hold that the rejection of his claim on direct appeal does not bar relitigation of his claim on habeas corpus to the extent that applicant seeks to gather and introduce additional evidence not contained in the direct appeal record.

## 3. Ineffective assistance claims

In both his present and original applications for habeas relief, Applicant alleged that (1) his pleas were involuntary because they were based on an assurance from the judge that he could raise his alleged denial of self-representation on appeal following conviction and (2) counsel was ineffective in failing to inform applicant that by pleading guilty without the benefit of a plea bargain, he would be unable to appeal the alleged denial of self-representation claim on direct appeal. With regard to the present application, trial counsel submitted an affidavit claiming that he did not know that applicant's guilty plea would prevent raising the alleged denial of self-representation on appeal. Trial counsel confirmed these remarks in an evidentiary hearing conducted after our last remand order. At the end of the hearing, the trial court made oral findings of fact to the effect that (1) counsel did not inform applicant that a guilty plea would waive the self-representation issue, (2) applicant would not have pled

guilty if he had been so advised, (3) applicant was improperly denied the right to represent himself at trial, and (4) applicant was improperly denied a hearing on his self-representation motion before the impaneling of the jury.

However, counsel's affidavit and the trial court's findings in connection with the initial writs conflict with those in the present writs. Trial counsel's affidavit (filed March 3, 1993) in connection with the initial writs denied applicant's allegations. Specifically, trial counsel stated that the reason applicant decided to enter guilty pleas following the voir dire was because he began to realize the severity of his situation. That is, by proceeding with the jury trial, applicant faced a minimum of 25 years to life upon conviction, the facts weighed heavily against him, his only defense witness was of questionable credibility—having just been released from TDCJ–ID on parole—and applicant would have to inform the jury of his prior convictions if he chose to take the stand in his defense. Further, the trial judge was willing to give applicant the benefit of a prior plea offer he had rejected from the State: a cap of 50 years confinement on each sentence. Counsel advised him as to the consequences of his pleas, specifically, that by entering non-negotiated pleas of guilty, he was waiving all non-jurisdictional defects and that the denial of his request for self-representation could not be raised on appeal. Counsel stated there was no hesitation on Applicant's part to enter his pleas and that Applicant's pleas were entered willingly and voluntarily.

The trial court made findings of fact and conclusions of law in response to these original applications (order dated April 5, 1993), found that the facts asserted in the affidavit of trial counsel were true, and that said facts together with the official court records demonstrate that the totality of the representation afforded applicant was sufficient to protect his right to reasonably effective assistance of counsel. The trial court concluded that applicant knowingly and voluntarily entered his pleas in the primary case.

 While we are not bound by a trial court's findings in a habeas corpus action, we generally accept those findings if they are supported by the record. *Ex Parte Brandley,* 781 S.W.2d 886, 887–888 (Tex.Crim.App. 1989), *cert. denied,* 498 U.S. 817, 111 S.Ct. 61, 112 L.Ed.2d 35 (1990). In the present case, however, we are unsure of which findings to accept. Consequently, we remand this cause to the trial court to enter findings after considering all of the material obtained in connection with applicant's initial and subsequent writs.

BAIRD, Judge, concurring.

While it is true that *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), dealt with the "cause and prejudice standard," it is more important to consider the context in which that standard was developed.

State courts consider *only* habeas applications from inmates convicted of *state* crimes. However, federal courts consider habeas petitions from defendants convicted of *either* state or federal crimes. The *federal* courts in *McCleskey* considered the habeas application of a *state* prisoner. The "cause and prejudice" standard established a procedural bar which precludes federal courts from considering habeas applications from state inmates. Because Tex.Code Crim. Proc. Ann. art. 11.07 deals exclusively with a unitary system of state inmates and state courts, the majority's reliance on *McCleskey* is misplaced, *ante* at 473–474, and for that reason, I cannot join the majority opinion.

Accordingly, I join only the judgment of the Court.

OVERSTREET, MEYERS and PRICE, JJ., join this opinion.