**Ex Parte Juan Jose REYNOSO.[1]**

No. AP–75963.

Court of Criminal Appeals of Texas.

July 2, 2008.

---

9. *Blount v. State,* 201 S.W.3d 170, 173 (Tex. App.-Houston [14th Dist.] 2006).

1. Applicant's name is reflected in court documents both as "Reynoso" and as "Reynosa."

Applicant signs his name "Reynoso." This Court will continue to use the spelling "Reynoso."

Steven R. Rosen, Houston, for Appellant.

Lynn P. Hardaway, Asst. District Atty., Houston, Jeffrey L. Van Horn, State's Atty., Austin, for State.

## *OPINION*

PER CURIAM.

This is a post conviction application for writ of habeas corpus filed pursuant to the provisions of Texas Code of Criminal Procedure article 11.071. In an order delivered on June 27, 2007, dismissing the application as untimely, we set out a detailed account of applicant's repeated attempts to waive his appeals that were interspersed with an occasional desire to pursue those same appeals. *Ex parte Reynoso*, 228 S.W.3d 163 (Tex.Crim.App.2007). Given the timing and applicant's repeated claims that he did not want to pursue his appeals, we held that, although his application was filed during an interval in which he chose to pursue his appeals, applicant could not show good cause for the untimely filing. *Id.* Therefore, we dismissed his application in its entirety and declined to appoint him new counsel under Article 11.071 § 4A. *Id.* Applicant subsequently filed a suggestion that we reconsider the case on our own initiative as allowed under Texas Rule of Appellate Procedure 79.2(d). Applicant asserted that the Court had not considered the application of Texas Rule of Appellate Procedure 4.1(a) in calculating the date on

which applicant's habeas application had been due. We granted rehearing on our own initiative and asked for briefs on the issue. Throughout the scholarly debate that followed, the Court discovered that the issue was much more detailed and complicated than simply asking whether the calculation rule should be applied. We now file and set and issue the following opinion, concluding that there was good cause for applicant's tardy filing, but denying relief on his writ.

## A. History of the Case

On May 12, 2004, a jury convicted applicant of the offense of capital murder. The jury answered the special issues submitted pursuant to Texas Code of Criminal Procedure article 37.071, and the trial court, accordingly, set punishment at death. The trial court timely appointed both direct appeal counsel and habeas counsel. Applicant refused to sign the oaths of indigency and orders appointing counsel. Immediately thereafter, and consistently for the next several months, applicant repeatedly stated that he wanted to waive all of his appeals and have the trial court set an execution date.

In an effort to make sure that applicant was properly warned of the dangers of this path, and to supplement the record with evidence that applicant was making his choice knowingly and voluntarily, this Court abated the direct appeal and directed the trial court to address the issues on the record and to answer certain questions. *Reynoso v. State*, No. AP–74,952 (Tex.Crim.App. Sept.15, 2004) (not designated for publication). We specifically instructed the trial court in this order that, if applicant knowingly and voluntarily waived his right to file a habeas application, the trial court should rescind its order appointing counsel on habeas.

On November 8, 2004, the trial court held a hearing to comply with this Court's order. During that hearing, applicant again stated that he wanted to waive his right to habeas proceedings. Consequently, the trial court withdrew its order appointing Steven "Rocket" Rosen as habeas counsel. Meanwhile, as required by statute, applicant's direct appeal continued, and the following events transpired:

- November 18, 2004—Counsel on direct appeal filed a brief. (When informed that the direct appeal could not be waived, applicant chose to allow counsel to proceed.)

- November 28, 2004—Applicant wrote a letter to the trial court requesting that it set an execution date. (This was not his first such letter.)

- February 8, 2005—Applicant sent another letter requesting an execution date.

- February 23, 2005—The State filed its brief on direct appeal.

- March 2, 2005–Applicant wrote a letter to the trial court stating that he had changed his mind and wanted to pursue his appeals. Consequently, even though his appointment had been withdrawn, Rosen requested a 90–day extension for filing applicant's habeas application. The trial court granted this timely made extension motion on March 29, 2005.

- April 4, 2005—The trial court convened a hearing at which applicant confirmed that he wanted to pursue his Article 11.071 habeas action. Thus, the trial court re-appointed Rosen to represent him.

- April 9, 2005 (Saturday)-Original due date for Article 11.071 application for writ of habeas corpus had no extension been filed.

- May 1, 2005—Applicant wrote a letter to the trial court in which he again changed his mind and stated, "again, once and for all, . . . I DO NOT want Rocket [Steven] Rosen to represent me. I wish to waive my appeals. I would like an execution date immediately."

- May 4, 2005—In a published order responding to the trial court's notice of re-appointment, we held that, when counsel's initial timely appointment was withdrawn pursuant to applicant's decision to waive his right to seek relief by writ of habeas corpus, applicant was considered to have chosen to proceed *pro se* for the purposes of Article 11.071, at least until the filing deadlines had passed. *In re Reynoso*, 161 S.W.3d 516 (Tex.Crim.App. 2005). Because applicant thereafter changed his mind about waiving his right to habeas and asked the court to appoint counsel prior to the filing deadline, and because the trial court re-appointed Rosen, we held that the re-appointment would be treated as a rescission of the November 2004 order allowing counsel to withdraw. *Id.* In that same published order, we further held that an appointment beyond the 30 days allowed by Article 11.071 § 2(c) is untimely and not allowed by the statute.

- May 19, 2005—Attorney Sidney Crowley, whom Rosen had contacted to assist in preparing the habeas application, visited applicant in prison. In the face-to-face meeting, applicant told Crowley that he

did not want a writ application filed on his behalf. Upon further questioning, applicant reiterated his position.

- June 22, 2005—Applicant wrote another letter to the trial court asking it to disregard his last request to drop his appeals.

- July 11, 2005 (Monday)—Rosen filed an Article 11.071 habeas application on applicant's behalf.

- December 14, 2005—This Court affirmed applicant's conviction and sentence on direct appeal. *Reynoso v. State*, No. AP–74952, 2005 WL 3418293 (Tex.Crim. App. Dec.14, 2005) (not designated for publication).

- January 9, 2006—The State filed its answer on habeas.

- October 11, 2006—The trial court entered findings of fact and conclusions of law recommending that relief be denied on the single claim raised in applicant's habeas application.

- October 19, 2006—Applicant filed an application for the appointment of new habeas counsel in the trial court. The document appears to have been mailed on October 12, 2006, one day after the court issued its findings and conclusions regarding applicant's habeas application.

- December 20, 2006—This Court ordered the trial court to resolve the issues raised in applicant's *pro se* application for the appointment of new counsel. *Ex parte Reynoso*, No. WR–66,260–01, 2006 WL 3735397 (Tex.Crim.App. Dec. 20, 2006) (not designated for publication).

• May 4, 2007—The trial court addressed the issues raised in applicant's *pro se* application for the appointment of new counsel as directed by this Court's order of December 20, 2006. The trial court issued findings and conclusions and recommended that the pending application filed by Rosen be withdrawn and new counsel appointed.

• June 27, 2007—This Court dismissed applicant's habeas application as untimely. We later granted rehearing on our own initiative and asked for briefs.

With this background in mind, we now turn to the issues to be determined in this case.

### B. The Time to File

■ The first issue to determine is whether, under the facts of this case, the original due date was governed by the 45–day rule or the 180–day rule of Article 11.071. Article 11.071 § 4(a) provides that:

> [a]n application for a writ of habeas corpus, ..., must be filed in the convicting court not later than the 180th day after the date the convicting court appoints counsel under Section 2 or not later than the 45th day after the date the state's original brief is filed on direct appeal with the court of criminal appeals, whichever date is later.

In the original version of the statute, the 180–day time frame was only applicable to "those applicants" convicted prior to September 1, 1995, the effective date of the statute. However, later versions of the statute retained the 180–day language without regard to the date of conviction. Therefore, in the proper instance, the 180–day deadline will apply. Applicant makes an alternative argument on reconsideration of his writ application that the 180–day rule should apply because 180 days after counsel's reappointment was a later date than 45 days after the date the State's brief was filed on direct appeal. Applying the 180–day due date rule in the instant case would clearly make the July 11, 2005, filing timely.

In *In re Reynoso*, this Court held that the trial court had properly interpreted Article 11.071 § 4(a) to require that, "despite the date on which counsel was reinstated, applicant had until the 45th day after the State filed its response brief to file or seek an extension of time to file the application." 161 S.W.3d 516. Article 11.071 § 2 provides that, "immediately after judgment is entered [in a death penalty case]," the convicting court shall determine if the defendant is indigent and, if so, whether he desires the appointment of counsel for the purpose of filing a writ of habeas corpus. If the answer to both questions is "yes," then the convicting court "[a]t the earliest practical time, but in no event later than 30 days" after making the above findings, shall appoint competent counsel. Art. 11.071 § 2(c).

A jury convicted applicant of capital murder on May 12, 2004, and the court sentenced him to death pursuant to the jury's answers to the punishment special issues. On May 19, 2004, the court appointed Rosen to represent applicant for the purpose of filing an application of writ of habeas corpus. Because this appointment was made within the "immediately after judgment is entered" plus 30–day

period, it was a timely and authorized appointment under Section 2 of the statute. Without regard to the possible application of Texas Rule of Appellate Procedure 4.1, 180 days from this appointment would have been November 15, 2004. The State's brief was filed in applicant's direct appeal on February 23, 2005. Therefore, clearly, 45 days after this date provided the later of the two dates.

Applicant's alternative argument—the 180–day rule should apply because 180 days after counsel's reappointment was a later date than 45 days after the date the State's brief was filed on direct appeal—is not persuasive. Under the plain language of Article 11.071 § 4(a), counsel's April 4, 2005, reappointment does not qualify as counsel appointed "under Section 2"; that is, the appointment was not made within the "immediately after judgment is entered" plus 30–days period. *See* TEX. GOV'T CODE Chapter 311 (the Code Construction Act). We followed this interpretation of the statute in *In re Reynoso*, when we construed the Section 2 language to mean that an appointment made beyond the 30–day period established by Article 11.071 § 2(c) is untimely and not allowed by the

statute. 161 S.W.3d at 516. We further explained that, when the trial court allowed timely appointed counsel to withdraw, the effect for the purposes of Article 11.071 was that applicant was considered to have chosen to proceed *pro se*, at least until the filing deadlines had passed. *Id.*

When applicant later changed his mind and asked the court to appoint counsel prior to the filing deadline, and because the trial court re-appointed the same counsel, we held that the re-appointment would be treated as a rescission of the November 2004 order allowing counsel to withdraw. *Id.* Put another way, we essentially held in *In re Reynoso* that the trial court initially timely appointed counsel, then applicant "substituted" in as his own counsel, and finally counsel "substituted" in for *pro se* "counsel" without changing the applicable due date. Because the 180–day deadline runs from the latest date the court *could have or should have* appointed counsel (that is, within 30 days after the court determines whether the applicant is indigent and desires the appointment of counsel, which findings should be made "immediately after judgment is entered in the case"), the 45–day deadline provided the later date.[2]

---

2. As previously stated, in *Reynoso v. State*, No. AP–74,952 (Tex.Crim.App. Sept.15, 2004)(not designated for publication), this Court abated applicant's direct appeal for a clarification of the record regarding his desire to pursue his appeals. We specifically instructed the trial court in the order that, if applicant "knowingly and voluntarily" chose not to file a habeas application, the court should rescind its order appointing counsel on habeas. Although Article 11.071 does not expressly provide that an applicant can waive his right to pursue habeas relief, neither does the statute provide for automatic habeas review. *Compare* Art. 37.071 § 2(h) (providing for an automatic review of a death case on direct appeal). Thus, we implicitly held that an applicant may

"waive" his right to habeas review. However, because an applicant can waffle in his decision until the day the application is due, a "waiver" is not truly effective until after that date has passed. Likewise, an applicant can waffle in his decision to have counsel, but in order to qualify as counsel appointed "under Section 2," newly "appointed" counsel should properly be considered as counsel *substituting* for *pro se* "counsel."

If no application is ultimately filed, Article 11.071 requires the trial court to notify this Court within ten days after the deadline to file has passed that no application has been filed. Then this Court can determine if an applicant is barred from habeas review because he vol-

## C. The Application of Texas Rule of Appellate Procedure 4.1 and the Code Construction Act

■ Having determined that applicant was subject to the 45–day rule governing the applicable due date, we must now determine whether to apply Texas Rule of Appellate Procedure 4.1 or Chapter 311 of the Texas Government Code (the Code Construction Act) to the calculation of time for filing under Article 11.071. The State's brief was filed in applicant's direct appeal on February 23, 2005. Under the 45–day rule, applicant's application for writ of habeas corpus was originally due "not later than" April 9, 2005, a Saturday (hereinafter referred to as the "original due date").

Texas Rule of Appellate Procedure 4.1(a) (Computing Time) provides:

> The day of an act, event, or default after which a designated period begins to run is not included when computing a period prescribed or allowed by these rules, by court order, or by statute. The last day of the period is included, but if that day is a Saturday, Sunday, or legal holiday, the period extends to the end of the next day that is not a Saturday, Sunday, or legal holiday.

The Code Construction Act § 311.014 (Computation of Time) provides:

> (a) In computing a period of days, the first day is excluded and the last day is included.

> (b) If the last day of any period is a Saturday, Sunday, or legal holiday, the period is extended to include the next day that is not a Saturday, Sunday, or legal holiday.

If applicant had been prepared to file his application on or before the original due date of Saturday, April 9, 2005, then both of the above provisions mandate that an application filed on Monday, April 11, would be considered timely. But applicant did not file his application on the original due date. Rather, he asked for and received a 90–day extension, which is allowed by Article 11.071 § 4(b). Thus, the question becomes on what day the 90–day extension began. If the extension began on April 9, 2005, as the State argues, then applicant would have been required to file his application on or before Friday, July 8, 2005. If the extension began on April 11, 2005, as applicant argues, then applicant would have been required to file his application on or before Sunday, July 10, 2005, making his filing on Monday, July 11, 2005, timely.

■ The Code Construction Act § 311.011(a) provides: "Words and phrases shall be read in context and construed according to the rules of grammar and common usage." Section 311.021 states that, in enacting a statute, there is a presumption that the entire statute is intended to be effective. Texas Code of Criminal Procedure article 11.071 § 4(b) provides:

---

untarily chose not to file, or whether remedial action is necessary because an application should have been filed. In the case of an attempted waiver, as a matter of policy and practicality, when a defendant steadfastly professes that he does not wish to have an attorney represent him for the purpose of pursuing habeas relief, then he should not have to endure, nor should the taxpayers of the State of Texas have to pay for, such an appointment knowing that any attorney appointed would be statutorily required and ethically bound to investigate the case to the best of his ability

despite the defendant's wishes. Our statement in *Ex parte Reynoso*, 228 S.W.3d 163, 165, that "any attorney would be reasonable in declining to work on a habeas application under the circumstances [of this case]" may have painted with too broad a brush given the statutory duty of Article 11.071 § 3(a) that appointed counsel "shall investigate" the case before and after the appellate record is filed. Thus, counsel faced with an uncooperative client should either (1) move to withdraw from the case, or (2) diligently pursue the investigation despite his client's protests.

The convicting court, *before* the filing date that is applicable to the applicant under Subsection (a), may for good cause shown and after notice and an opportunity to be heard by the attorney representing the state grant one 90–day extension that begins on the filing date applicable to the defendant under Subsection (a). Either party may request that the court hold a hearing on the request.

[Emphasis added.] The plain language of this statute means that an applicant must file a request for an extension of time and the trial court must rule on that request prior to the original due date. An extension filed or ruled upon on or after the original due date is not timely under the language of the statute.[3] There is no dispute that an extension was filed and ruled upon in a timely manner in this case.[4]

■ If an extension to file is denied, then the requirement that an extension be filed and ruled upon *before* the original due date for the filing of the application gives an applicant some time, albeit potentially a very short amount of time, to complete the application and file it. If the extension is granted, then the applicant knows prior to the due date that he has an additional 90 days in which to file his application. If his original due date fell on a Saturday, Sunday, or legal holiday, but an extension was

granted before that time, then the purpose for extending the filing date to the next business day pursuant to Section 311.014 or Rule 4.1 ceases to exist. Thus, in order to give effect to the language in the statute that an extension "begins on the filing date applicable to the defendant under Subsection (a)," it is reasonable to conclude that the Legislature intended the extension to begin on the actual calendar day instead of the date as calculated by the application of Section 311.014 or Rule 4.1. To be perfectly clear, we hold that Section 311.014 and Rule 4.1 do not apply to the calculation of an original due date under Article 11.071 § 4(b) when an extension has been granted under that provision.

Having so held, under the facts of this case, the 90–day extension began on April 9, 2005. Excluding April 9 from the 90 days, the extended due date fell on Friday, July 8, 2005. *See* Code Construction Act § 311.014(a)(providing that "[i]n computing a period of days, the first day is excluded and the last day is included"). Because applicant filed his application on July 11, 2005, it was untimely.

### D. Article 11.071 § 4A and a Showing of Good Cause

■ When an untimely application is filed, this Court can command counsel to show cause as to why the application was

---

3. Neither Code Construction Act § 311.014(b) nor Texas Rule of Appellate Procedure 4.1 can apply to the filing of an extension of time under Article 11.071 § 4(b). To do so would result in a logical impossibility. To illustrate: suppose the original filing date for an application fell on a Sunday. Under the plain language of the statute, an extension would have to be filed and ruled upon by Saturday. While other situations would apply Section 311.014 and Rule 4.1 to allow the filing on Monday, a filing on Monday in this situation would mean that the extension was filed on the due date, thereby rendering the extension untimely filed.

4. It is worth noting that in applicant's motion for an extension of time to file, applicant requests the 90–day extension "from the due date of April 4, 2005[.]" Under this time frame, applicant should have expected to file his application on or before July 5, 2005, six days before he actually filed it. However, this is not material in this case because under the plain language of Article 11.071 § 4(b), the extension "begins on the filing date applicable to the defendant under Subsection (a)."

untimely filed. Art. 11.071 § 4A(a). At the conclusion of counsel's presentation, the Court may:

(1) find that good cause has not been shown and dismiss the application;

(2) permit the counsel to continue representation of the applicant and establish a new filing date for the application . . .; or

(3) appoint new counsel to represent the applicant and establish a new filing date[.]

Art. 11.071 § 4A(b). In *Ex parte Reynoso*, 228 S.W.3d 163 (Tex.Crim.App.2007), this Court found that the delay in filing applicant's application was attributable to applicant's own continued insistence upon waiving habeas corpus review. Indeed, the record shows that less than a week after counsel was timely appointed, applicant told the trial court that he did not want to pursue habeas corpus review, and he maintained that position for nearly ten months, until March 2, 2005. The trial court allowed counsel to withdraw in early November 2004. On April 4, 2005, counsel was re-appointed to file a habeas application on applicant's behalf, but less than a month later applicant was again expressing his desire to waive habeas relief. Indeed, when co-counsel went to the prison to discuss the case with applicant, applicant told him quite emphatically that he did not want to pursue habeas review. Nearly two months after that, applicant told the court that he did want to pursue habeas review. Based on applicant's waffling, this Court found that no good cause had been shown under Article 11.071 § 4A and dismissed the application. *Ex parte Reynoso*, 228 S.W.3d at 166.

However, in focusing solely on applicant's behavior and actions in *Ex parte Reynoso*, we did not consider counsel's role in the habeas proceedings and in the filing of the application. *Id.* For the purposes of this case, the primary fact we must consider is the same fact on which we granted reconsideration: the application of Rule 4.1 and Code Construction Act § 311.014 to the calculation of time to file. Although we held earlier in this opinion that counsel improperly applied the provisions resulting in an untimely filed application, we cannot say, in the absence of controlling authority to the contrary, that counsel's interpretation of the application of the provisions was completely unreasonable. In other words, his tardiness in filing was due to a mistaken, but not totally implausible, interpretation of the law. Under these circumstances, we will find good cause for the tardy filing, accept the application as timely filed as of July 11, 2005, and review the merits of the claim raised. *See* Art. 11.071 § 4A(b)(2).

■ Applicant presented one claim in his application. Because that claim was raised and rejected on direct appeal, it is not cognizable on habeas review. *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim.App.1997). Relief is denied.

PRICE, J., filed a concurring opinion.

PRICE, J., concurring on rehearing on Court's own motion.

On June 27, 2007, we entered an order dismissing the applicant's initial application for writ of habeas corpus as untimely under Article 11.071, Section 4 of the Texas Code of Criminal Procedure.[1] We do not entertain rehearings from the denial of relief in writ applications, under Rule 79.2(d) of the Texas Rules of Appellate Procedure.[2] Accordingly, the applicant

---

1. *Ex parte Reynoso*, 228 S.W.3d 163 (Tex. Crim.App.2007).

2. Tex.R.App. P. 79.2(d) ("A motion for rehearing an order that denies habeas corpus relief

filed, not a motion for rehearing, but a suggestion that we reconsider our initial disposition on our own initiative, which Rule 79.2(d) authorizes us to do.

In dismissing the applicant's initial writ application as untimely, our calculation was based upon a construction of Article 11.071, Section 4(b), which provides that a 90–day extension may be granted, to begin running "on the filing date applicable to the defendant under Subsection (a)." [3] Even though the "filing date applicable to the defendant under Subsection (a)" fell on a Saturday, we held that the 90–day extension that the applicant obtained should begin to run on that date, according to the plain language of Subsection (a).

In his motion suggesting that we reconsider the case on our own initiative, the applicant argues that when one considers the application of Rule 4.1(a) of the Texas Rules of Appellate Procedure, [4] his initial application was timely filed. This question was not briefed by the parties prior to our dismissal of the initial writ application. We therefore granted rehearing on our own initiative of our order dismissing the applicant's initial writ application, limited

to the issue of how Rule 4.1(a) should apply in this situation, and whether the applicant's initial writ application was timely filed in view of that rule.

A 90–day extension, if granted under the provisions of Article 11.071, Section 4(b), begins to run, by the plain terms of the statute itself, "on the filing date applicable to the defendant under Subsection (a)" of Section 4. Subsection (a) of Section 4, as it applies to the applicant's case, required him to file his initial writ application "not later than the 45th day after the date the state's original brief [was] filed on direct appeal with" this Court. The Court's order on original submission assumed, without deciding, that "the filing date applicable ... under Subsection (a)" would be determined without resort to provisions outside of Article 11.071 that ordinarily inform our interpretation of statutory time computations. [5] One of those outside provisions is Rule 4.1(a). Another is Section 311.014(b) of the Code Construction Act, [6] which applies to judicial interpretation of amendments and revisions to the Code of Criminal Procedure. [7]

---

under Code of Criminal Procedure, articles 11.07 or 11.071, may not be filed. The Court may on its own initiative reconsider the case.").

**3.** Tex.Code Crim. Proc. art. 11.071, § 4(b).

**4.** Tex.R.App. P. 4.1(a) ("The day of an act, event, or default after which a designated period begins to run is not included when computing a period prescribed or allowed by these rules, by court order, or by statute. The last day of the period is included, but if that day is a Saturday, Sunday, or legal holiday, the period extends to the end of the next day that is not a Saturday, Sunday, or legal holiday.").

**5.** *Ex parte Reynoso, supra,* at 165.

**6.** Tex. Gov't Code § 311.014(b) ("If the last day of *any period* is a Saturday, Sunday, or legal holiday, the period is extended to in-

clude the next day that is not a Saturday, Sunday, or legal holiday.").

**7.** *See* Tex. Gov't Code § 311.002(2) ("This chapter [including § 311.014] applies to ... each amendment, repeal, revision, and reenactment of a code or code provision by the 60th or a subsequent legislature[.]"). Article 11.071 of the Code of Criminal Procedure was enacted by the 74th Legislature. *See* Acts 1995, 74th Leg., ch. 319, § 1, eff. Sept. 1, 1995. Therefore, Section 4(b) of Article 11.071 must be construed with reference to the provisions of the Code Construction Act. *Ex parte Ruthart,* 980 S.W.2d 469, 472 n. 4 (Tex.Crim.App.1998); *Ex parte Torres,* 943 S.W.2d 469, 473 n. 5 (Tex.Crim.App.1997); *Postell v. State,* 693 S.W.2d 462, 464 (Tex. Crim.App.1985); *Barbee v. State,* 432 S.W.2d 78, 82 (Tex.Crim.App.1968). *See* George E. Dix & Robert O. Dawson, 40 Texas Practice: Criminal Practice and Procedure § 0.63 (2d ed.2001) at 23.

According to these explicit time-computation provisions, a period of time that is designated by statute or code should never be construed as ending on a weekend or holiday. Indeed, "any period" of time so designated shall be calculated in this way,[8] regardless of the context, unless the specific statute that sets out that period expressly and explicitly provides otherwise. Subsection 4(a) of Article 11.071 does not provide otherwise.[9] It merely designates a particular period of time, namely, 45 days from the date the State files its appellate brief. In calculating that 45–day period time, *for whatever purpose,* both Rule 4.1(a) and Section 311.014(b) express a legislative intent that we should extend the period to the next business day should the last day happen to fall on a weekend or holiday. These computation of time provisions are indifferent to whether we are calculating the period of time for purposes of determining when an initial capital writ application should be filed, assuming no 90–day extension has been granted pursuant to Subsection 4(b), or whether, instead, we are calculating when a 90–day extension that *is* granted under Subsection 4(b) should be construed as beginning to run.

The statutory construction provisions do not instruct us to take into account *why* we are calculating a relevant period of time—they only tell us *how* to calculate it.

If my understanding of how the 45–day period should be calculated is faulty, and the Court is correct not to consider the application of Rule 4.1(a) and Section 311.014, it nevertheless cannot be gainsaid that my understanding is at least a plausible one. It would not have been unreasonable for the applicant's attorney to have believed his initial writ application was timely filed. Indeed, neither the parties nor the trial court questioned its timeliness, and it was this Court that first declared that there was a problem. Even by the Court's (in my view erroneous) calculation, the applicant's writ application was filed on the next business day after it was due. It is clear that the applicant was not personally at fault here; any fault was with his attorney. The lateness of the filing (if any) was plainly attributable to habeas counsel's "dereliction" (if any) in miscalculating (assuming he did) the due date, *not* to any obstructive or contumacious conduct on the applicant's part, as

---

8. Tex. Gov't Code § 311.014(b).

9. By contrast, Subsection 4(b) of Article 11.071 *does* expressly designate a method of computing the 90–day extension period that deviates from the usual code-construction norm. Subsection 4(b) expressly provides that the 90–day extension "begins on the filing date applicable to the defendant under Subsection (a)." This means that the last day of the 45–day period (however that should be determined) is also the first day of the 90–day extension. In other words, the first day is included in the 90–day calculation, contrary to the general rule of statutory and code construction embodied in both the first sentence of Rule 4.1(a) of the Rules of Appellate Procedure ("The day of an act, event, or default after which a designated period begins to run is not included when computing a period prescribed or allowed by these rules, by court order, or by statute.") and Section 311.014(a)

of the Code Construction Act ("In computing a period of days, the first day is excluded and the last day is included."). This express deviation from the code-construction norm should of course control, since the Code Construction Act itself contemplates that specific provisions should control over general ones. Tex. Gov't Code § 311.026(b) (where general and special statutory provisions are irreconcilable, special provision will prevail). But Article 11.071 contains no comparable language to indicate that the general rule embodied in Rule 4.1(a) and Section 311.014(b)-that the last day of any given period should not be construed to fall on a weekend or holiday-should not apply, or that it should be deemed to apply only selectively (for example, at the end of the 90–day extension, but not at the end of the 45–day initial period whenever a 90–day extension is granted).

the Court concluded on original submission.[10] For all of the applicant's apparent uncertainty with respect to whether he wanted to waive his right to proceed with a habeas application, any lateness of the application that ultimately *was* filed on his behalf obviously proceeded from habeas counsel's miscalculation, not from the applicant's vacillation. We have treated such reasonable miscalculations in the past as sufficient to justify permitting late-filing under Article 11.071, Section 4A(b)(2).[11] For this reason the Court ultimately reaches the merits of the applicant's single (albeit, in the Court's view, untimely filed) claim, and appropriately denies it. I concur in that result.

10. *See Ex parte Reynoso, supra,* at 165 ("The provision for appointment of new counsel is designed to safeguard the statutory right to a habeas remedy from the actions of derelict counsel. That provision should not be used to afford a remedy when the applicant himself is responsible for the lateness of the application. Otherwise, applicants would acquire a new tool for 'gaming the system' in order to delay execution.").

11. TEX.CODE CRIM. PROC. art. 11.071, § 4A(b)(2) ("At the conclusion of the counsel's presentation [of good cause] to the court of criminal appeals, the court may . . . permit the counsel to continue representation of the applicant and establish a new filing date for the application, which may not be more than 180 days from the date the court permits the counsel to continue representation[.]"). *See, e.g., Ex parte Perez,* (Tex.Crim.App., No. WR–56,440–01, delivered July 15, 2003); *Ex parte Masterson,* (Tex.Crim.App., No. WR–59,481–01, delivered July 6, 2004; *Ex parte Murphy,* (Tex. Crim.App., No. WR–63,549–01, delivered December 14, 2005)).