# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-70029

United States Court of Appeals
Fifth Circuit

**FILED**

October 22, 2018

Lyle W. Cayce
Clerk

BILLY JOE WARDLOW,

      Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

      Respondent - Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:04-CV-408

Before HIGGINBOTHAM, JONES, and COSTA, Circuit Judges.

PER CURIAM:*

    More than two decades after being sentenced to death for murdering an 82-year-old man, Billy Joel Wardlow seeks to appeal the district court's denial of his petition for writ of habeas corpus. He asks us to certify the following questions: (1) whether his claims are procedurally barred; (2) whether the state court's factual findings are entitled to a presumption of correctness; (3) whether the State substantially interfered with his codefendant's decision

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## No. 17-70029

not to testify; (4) whether his trial counsel was ineffective for not objecting to the medical examiner's testimony; and (5) whether his trial counsel was ineffective at the punishment phase of trial. Because the district court's holding that his claims are procedurally barred is not debatable, we do not grant a certificate of appealability.

### I.

### A.

Wardlow shot and killed Carl Cole while committing a robbery at Cole's home in the small east Texas town of Cason. When he was in jail awaiting trial, Wardlow wrote a confession to the sheriff investigating the murder. The State relied on that letter to prove the intent element required for a capital murder conviction. The letter stated that Wardlaw went to Cole's house, intending to steal a truck. Once inside the house, Wardlow said that he pulled a gun on Cole. Wardlow added:

> Being younger and stronger, I just pushed him off and shot him right between the eyes. Just because he pissed me off. He was shot like an executioner would have done it. He fell to the ground lifeless and didn't even wiggle a hair.

Wardlow testified and confirmed he killed Cole but gave a different reason for doing so. He told the jury that he did not intend to kill Cole when he went to his house; instead, he and his girlfriend Tonya Fulfer only intended to rob Cole and steal his truck. When Wardlow brought out the gun and told Cole to go back inside the house, Cole lunged at Wardlow and grabbed his arm and the gun, attempting to push Wardlow away. Wardlow testified that Cole was stronger than he expected, so he was caught off balance and began falling backwards. Wardlow said he shot the gun without aiming, hoping it would get Cole off him. The bullet hit Cole right between the eyes.

No. 17-70029

The state countered Wardlow's claim about his intent by noting inconsistencies in his story and testimony from a medical examiner inconsistent with the gunshot occurring during a struggle.

The jury found Wardlow guilty of capital murder. After the punishment phase, during which it heard that Wardlow threatened to harm fellow inmates and kill a guard as he awaited trial, it sentenced him to death.

B.

On direct review, the Texas Court of Criminal Appeals affirmed Wardlow's conviction and sentence. That same year (1997), the state trial court conducted a hearing to determine whether Wardlow desired the appointment of counsel to help with state postconviction review. Wardlow told the court he did not want counsel appointed and did not want to pursue further appeals. The trial court followed Wardlow's wish after finding that he was mentally competent and that his waiver of appointed counsel was voluntary and knowing. The state trial court forwarded these findings to the Texas Court of Criminal Appeals.

Before the Court of Criminal Appeals issued an order confirming the waiver, Wardlow entered into a legal representation agreement with attorney Mandy Welch in which she agreed to notify the state courts that Wardlow did, in fact, wish to pursue his post-conviction remedies. The state trial court entered supplemental findings confirming Wardlow's change of heart, and the Court of Criminal Appeals appointed Welch to represent Wardlow. It ordered that his state habeas application be filed within 180 days.

Eighteen days before that deadline, Wardlow changed his mind again. He sent the Court of Criminal Appeals a letter expressing a desire to "waive and forego all further appeals." The court granted Wardlow's waiver request.

No. 17-70029

Despite the court's granting the waiver Wardlow had requested, his lawyer filed a state habeas application before the deadline. Accompanying the application was a statement from Wardlow authorizing the filing of the application.

Nearly six years later, the state trial court issued an order addressing the merits of Wardlow's claims and recommending that his application be denied. Rather than review that ruling, the Court of Criminal Appeals dismissed the application on the procedural ground that it had previously granted Wardlow's waiver request.

Wardlow then filed this federal petition. Nearly eleven years and two judges later, the district court concluded that the Court of Criminal Appeals' dismissal of the state application operated as "a valid procedural bar to consideration of his claims." It nonetheless also examined the merits Wardlow's claims and concluded they would not entitle him to federal habeas relief.

## II.

Under the Antiterrorism and Effective Death Penalty Act, a certificate of appealability (COA) must issue to allow an appeal of the district court's refusal to grant the writ. 28 U.S.C. § 2253(c)(1)(A). To obtain a COA on procedurally-defaulted claims, Wardlow must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In a death penalty case, "any doubts as to whether a COA should issue must be resolved" in the petitioner's favor. *Allen v. Stephens*, 805 F.3d 617, 625 (5th Cir. 2015) (quoting *Medellin v. Dretke*, 371 F.3d 270, 275 (5th Cir. 2004)).

No. 17-70029

A.

The district court's procedural dismissal is not debatable. It followed the longstanding rule that a "federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Beard v. Kindler*, 558 U.S. 53, 55 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). Only adequacy is contested here. A state-law procedural bar is adequate to preclude federal consideration if it is "firmly established and regularly followed." *Lee v. Kemna*, 534 U.S. 362, 376 (2002) (citation omitted).

Texas courts recognize that "an express waiver of the right to post-conviction habeas corpus relief may be enforceable when it is 'knowingly and intelligently' executed." *Ex parte Reedy*, 282 S.W.3d 492, 494–96 (Tex. Crim. App. 2009). Wardlow requested that waiver (for the second time) 18 days before his state habeas deadline, and he does not contend that the state court erred in finding that the waiver was valid at that time. Instead, he argues the Texas Court of Criminal Appeals should have ignored or revoked the waiver because Wardlow's counsel ended up filing the state application in the trial court. He describes the state high court's procedural bar as an "ad hoc" ruling because, in his view, it is contrary to two other cases from that court.

We do not think that is a debatable critique of the district court's ruling. Wardlow never asked the Court of Criminal Appeals to rescind its waiver order. That distinguishes the two cases Wardlow cites in his attempt to show that Texas does not consistently hold petitioners to their waivers when they change their mind. In neither of those cases had the Court of Criminal Appeals even issued an order finding waiver. *Ex parte Reynoso*, 257 S.W.3d 715 (Tex. Crim. App. 2008); *Ex parte Murray*, No. 73,454 (Tex. Crim. App. June 7, 2000)

5

(not designated for publication). In *Murray*, only the state trial court had found waiver, so it was able revoke its own order when the petitioner made that request. *Id.* In *Reynoso*, the only official response to the petitioner's desire to waive habeas proceedings was the trial court's withdrawing its order appointing habeas counsel. 257 S.W.3d at 717. When the petitioner changed his mind, the lawyer was reappointed. *Id.* at 718. There was never an order finding waiver from either the trial court or Court of Criminal Appeals that had to be rescinded.

Although it did not involve a formal waiver finding, *Reynoso* explains in dicta that "because an applicant can waffle in his decision until the day the application is due, a 'waiver' is not truly effective until after that date has passed." *Id.* at 720 n.2. Wardlow emphasizes this quotation. It might have helped Wardlow if he had ever asked the Court of Criminal Appeals to revoke its waiver, but he never did. In saying a waiver is not "*truly* effective" until the deadline for the habeas application has passed, *Reynoso* was recognizing only that an applicant can withdraw his waiver up until the deadline. *Id.* (emphasis added). That is the only way to read it consistently with the discussion later in the same footnote that a waiver can relieve a court of the need to appoint habeas counsel (if a court could only enter a waiver finding the day the application is due, an attorney would have to work up to that point). *Id.*

Wardlow identifies no case in which the Court of Criminal Appeals had issued a waiver yet later ignored it even though the petitioner had not sought to rescind it. As a result, he has not raised a colorable argument that this "case falls within the small category of cases in which asserted state grounds are inadequate to block adjudication of a federal claim." *Lee v. Kemna*, 534 U.S. 362, 381 (2002).

6

No. 17-70029

We therefore will not authorize an appeal of the district court's ruling that his claims are procedurally barred.

B.

Even if Wardlow could show that the procedural bar is debatable, he would not be entitled to appeal for the additional reason that the merits of his claims are not debatable.  The district court also denied the petition on this alternative ground.  When assessing the substantive claims, it deferred to the state trial court's factual findings.  Recognizing the obstacle that deference poses, Wardlow maintains that Section 2254(e)(1)'s presumption of correctness does not attach because the Court of Criminal Appeals vacated the trial court's findings when it dismissed the application on procedural grounds.

But AEDPA requires deference to a state trial court's factual findings unless they are expressly rejected by, or are directly inconsistent with, the highest state court's ultimate resolution of the case.  *See Williams v. Quarterman*, 551 F.3d 352, 358 (5th Cir. 2008).  That is true even when the state high court's ultimate resolution is on procedural grounds.  *See Murphy v. Davis*, 901 F.3d 578, 596–97 (5th Cir. 2018) (holding that although the Court of Criminal Appeals dismissed the application on procedural grounds, section 2254(e)(1) provides deference to the state trial court's alternative merits findings because they were not directly inconsistent with the Court of Criminal Appeals' dismissal based on abuse of the writ);  *Austin v. Davis*, 876 F.3d 757, 776–79 (5th Cir. 2017) (applying section 2254(e)(1) deference to state-court fact findings even when a state habeas application was rejected by the Court of Criminal Appeals on procedural grounds as untimely).  Because the Court of Criminal Appeals' procedural dismissal of Wardlow's application did not cast any doubt on the trial court's factual findings, we must accept them unless

7

No. 17-70029

Wardlow can rebut them by "clear and convincing evidence."   28 U.S.C. §
2254(e).

That deference to the state court factfinding that our caselaw and
AEDPA requires is a big part of why Wardlow cannot meet the COA threshold
on his substantive claims.   Essentially for the reasons the district court
provided when analyzing the merits of Wardlow's claims under that deferential
lens, we do not find debatable its resolution of the three substantive claims
Wardlow seeks to appeal.

\* \* \*

The application for a certificate of appealability is DENIED.