

# NUMBER 13-11-00380-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

### EX PARTE JOSE GABRIEL GALVAN-HERRERA

---

### On appeal from the 206th District Court
### of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Perkes
### Memorandum Opinion by Justice Rodriguez

Appellant the State of Texas challenges the trial court's granting of appellee Jose Gabriel Galvan-Herrera's application for writ of habeas corpus. By two issues, the State argues that the trial court erred in granting the application because (1) Herrera did not overcome the procedural bar imposed by code of criminal procedure article 11.072, section 9, which governs subsequent habeas corpus applications, *see* TEX. CODE CRIM. PROC. ANN. art. 11.072, § 9 (West 2005), and (2) Herrera did not meet his burden to prove that his trial counsel provided ineffective assistance in regard to Herrera's 1987 guilty plea to a burglary charge. We vacate and dismiss for lack of jurisdiction.

## I. Background

It is undisputed by the parties that Herrera, a Mexican national, is a legal, permanent resident of the United States. In 1987, Herrera was indicted for second-degree felony burglary. Herrera pleaded guilty to the charged offense. The trial court sentenced him to five years' incarceration, but suspended the sentence and placed Herrera on probation for a period of five years. In 1992, after Herrera successfully completed his probation, the trial court set aside the guilty finding, dismissed the indictment, and discharged Herrera from probation.

In September 2010, Herrera was arrested by United States Immigration and Customs Enforcement and placed into deportation proceedings due to his burglary conviction. In January 2011, Herrera filed his original application for writ of habeas corpus, alleging that his 1987 trial counsel was ineffective for failing to advise him of the immigration consequences of his guilty plea. Herrera attached his affidavit to this application, which follows in its entirety:

> My name is Jose Gabriel Galvan-Herrera. I am over 18 years of age and competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.
>
> In 1987, I was charged with Burglary of a Building, a second degree felony in Hidalgo County, Texas. By this time I was already a legal permanent resident. Since I could not afford an attorney, the Court appointed Attorney A.C. (Tony) Garcia to defend me. The Court appointed Mr. Garcia on July 7, 1987 to represent me. After speaking to him for less than thirty (30) minutes, he advised me to plea [sic] guilty because I was going to get probation. He did not ask me any questions regarding my immigration status. He did not advise me that the plea would affect my immigration status. He did not advise me that my plea would make me deportable or that I could or would be deported if I pled guilty. I was not given enough time to think about what I was doing and with the ill-advice of Attorney Garcia, I pled guilty on the same day Attorney Garcia was appointed by the Court to protect my rights. I was sentenced to five years in the Texas Department of Corrections, however; [sic] it was suspended

and I served five (5) years probation and was fined $750.00.

> I relied completely on the advised [sic] of my attorney, A.C. (Tony) Garcia, when I made the decision to plea [sic] guilty. My attorney never advised me of the consequences of my plea on my immigration status. Had I known the effect this decision would have on my immigration status, I would have insisted on going to trial.

No hearing was held on the application, and on March 8, 2011, the trial court issued findings of fact, conclusions of law, and an order denying Herrera's application.

On March 10, 2011, Herrera filed an amended application for writ of habeas corpus.[1] The amended application was identical to the original application except that it included an additional affidavit by Herrera's mother, Rosa Elia Herrera Galvan. Herrera's mother's affidavit follows in its entirety:

> My name is Rosa Elia Herrera Galvan. I am over 18 years of age and competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.
>
> In 1987, my son Jose Gabriel Galvan-Herrera was arrested for Burglary of a Building and was bonded out. My brother and I took Jose to his first court appearance. The morning of the hearing, the Judge asked Jose if he had a lawyer and if he could afford one. Since he could not afford one, the Court appointed Attorney A.C. (Tony) Garcia to protect my son's rights. After that, I saw Attorney Garcia walk over to my son and spoke [sic] with him for no more than five (5) minutes. Attorney Garcia then moved away from Jose and walked back to where he was standing before. When my son's case was called, he and Attorney Garcia went before the Judge and Jose pled guilty. My son, Jose, was given five (5) years in the Texas Department of Corrections, however; [sic] it was suspended and he was placed on five (5) years probation and was fined $750.00.
>
> Attorney Garcia did not ask my son Jose any questions regarding his immigration status. He only spoke with Jose for no more than five (5) minutes before he pled. Mr. Garcia did not advise my son that his guilty plea could and would result in his deportation. My son Jose did not know

---

[1] Herrera asserts that he did not receive the trial court's March 8 order denying habeas before he filed his amended application on March 10.

3

he could get deported by pleading guilty. We would have had him go to trial if we had known he was going to be deported.

On March 17, 2011, Herrera also filed a motion to reconsider the trial court's denial of his original habeas corpus application.

The State responded to Herrera's amended application, arguing that the second application was barred by article 11.072, section 9 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072, § 9(a). The State also argued that Herrera did not meet his burden to prove his 1987 trial counsel was ineffective because burglary was not a deportable offense at the time of Herrera's guilty plea—and thus counsel was not deficient in not advising Herrera about the immigration consequences of his plea—and Herrera failed to show he would have insisted on going to trial but for counsel's deficient advice.[2]

On March 20, 2011, the trial court filed findings of fact, conclusions of law, and an order granting Herrera's subsequent application. In its findings of fact, the trial court

---

[2] The concurrence concludes that Herrera's trial counsel was deficient for failing to advise Herrera of the potential future immigration consequences of his 1987 guilty plea and that Herrera was prejudiced as a result. However, unlike the concurrence, we cannot look past the fact that burglary was undisputedly not a deportable offense at the time of Herrera's guilty plea. *See Alvarado-Fonseca v. Holder*, 631 F.3d 385, 387 (7th Cir. 2011) (citation omitted) (noting that an "aggravated felony" was not a deportable offense until 1988); *see also* 8 U.S.C. § 1101(a)(43) (1988) (providing that an "aggravated felony" included only murder, drug trafficking crimes, firearms and destructive devices trafficking, and conspiracy to commit one of those offenses). To hold that Herrera's counsel was deficient for failing to advise Herrera about immigration consequences that did not exist at the time of his guilty plea ignores the well-established rule that counsel cannot be expected to predict future developments in the law, a rule that the concurrence expressly disregards but that we cannot. *See Ex parte Chandler*, 182 S.W.3d 350, 359 (Tex. Crim. App. 2005).

Moreover, the concurrence does not address the entire prejudice prong of the ineffective assistance of counsel test. To show that he was prejudiced by his trial counsel's deficiency, Herrera must show that he would have insisted on going to trial if he had known the immigration consequences of his plea *and* that it would have been rational to do so under the circumstances. *See Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010). Here, there is a complete absence of evidence in the record regarding the rationality of Herrera's claim that he would have insisted on going to trial, much less any specific evidence showing that it would have been rational for Herrera to insist on going to trial at a time when there were no immigration consequences to his guilty plea. Without addressing the rationality of Herrera's insistence on going to trial, the concurrence's analysis of the ineffective assistance of counsel claim is incomplete.

4

found, in relevant part, that Herrera filed his amended application and motion for rehearing within thirty days of the court's original order. In its conclusions of law, the trial court, in relevant part: discussed article 11.072, section 9 of the code of criminal procedure, which requires a subsequent application to be based on either facts or law that could not have been presented in or was not available at the time of the previous application, *see id.*; concluded that the amended application and motion to reconsider were within the trial court's jurisdiction "as a motion for new trial" filed within thirty days of the original order; and determined that the court is bound by the United States Supreme Court's opinion in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010) and the First Court of Appeals's holding in *State v. Golding*, No. 01-10-00685-CR, 2011 Tex. App. LEXIS 3616, at *31-36 (Tex. App.—Houston [1st Dist.] May 12, 2011), *withdrawn and superceded by* No. 01-10-00685-CR, 2011 Tex. App. LEXIS 5360 (Tex. App.—Houston [1st Dist.] July 14, 2011, pet. ref'd). The trial court then granted Herrera's application for writ of habeas corpus "pursuant to section 9, article 11.072 of the Texas Code of Criminal Procedure." This appeal followed.

## II. Standard of Review

In reviewing a trial court's decision on a habeas corpus application, we view the facts in the light most favorable to the trial court's ruling, and absent an abuse of discretion, we uphold the ruling. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006). Although we afford almost total deference to the trial court's determination of the historical facts, those facts must be supported by the record. *Ex parte Garza*, 192 S.W.3d 658, 661 (Tex. App.—Corpus Christi 2006, no pet.). If the resolution of the ultimate question turns on an application of legal standards, we review the determination

5

de novo.   *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007).

### III.   The Nature of Herrera's Second Application and Article 11.072

By its first issue, the State argues that the trial court abused its discretion in granting habeas relief on what the State characterizes as Herrera's "subsequent" application.   The State argues that, because the trial court had already issued its order denying Herrera's original application, Herrera's second application was a subsequent application subject to the procedural bar in article 11.072, section 9(a) of the code of criminal procedure.   And because Herrera provided neither a previously unavailable factual or legal basis for his second application, it was barred, and the trial court did not have jurisdiction to consider it.   Because the following turns on applications of legal principles, we review the trial court's rulings de novo.   *See id.*

### A.   Was Herrera's Application a "Subsequent" or "Amended" Application?

The State asserts—and we agree—that the basis for the trial court's granting of Herrera's second application is unclear from the trial court's March 20, 2011 findings and conclusions.   Specifically, the trial court declares that it has jurisdiction over Herrera's amended application and motion to reconsider because both were filed within thirty days of the original order, but then orders Herrera's application granted "pursuant" to article 11.072, section 9.   In other words, it is unclear whether the trial court was:   granting Herrera's motion to reconsider and, as such, his "amended" application; or treating his second application as a "subsequent" application under article 11.072, section 9.   Regardless, the threshold legal question for this Court is whether Herrera's second application could have been an "amended" application to his first application or, rather,

6

was necessarily a "subsequent" application under article 11.072, section 9. We believe the latter is the correct procedural characterization of Herrera's second application.

We first address the trial court's conclusion that Herrera's motion to reconsider and "amended" application were governed by the rules applicable to motions for new trial. Herrera argues on appeal that the trial court acted within its authority to treat his motion to reconsider as a motion for new trial, which, because it was timely filed, extended the jurisdiction of the trial court, enabling it to rule on his second application as an "amended" application. *See* TEX. R. APP. P. 21.4. Rule 21 motions for new trial are a means by which a defendant directly challenges his guilty verdict or punishment, provided the motion is filed within thirty days of the verdict or imposition of sentence. *See* TEX. R. APP. P. 21.1(a)-(b), 21.4(a). By contrast, a defendant's collateral attack on his conviction—i.e., an application for writ of habeas corpus—is governed by chapter 11 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. §§ 11.01-.65 (West 2005 & Supp. 2011); *cf. Ex parte Cummins*, 169 S.W.3d 752, 757 (Tex. App.—Fort Worth 2005, no pet.) ("An application for habeas corpus is not like a motion for new trial in the sense that a habeas proceeding is not part of the underlying criminal prosecution against the applicant.") (citing *Greenwell v. Court of Appeals for the 13th Jud. Dist.*, 159 S.W.3d 645, 650 (Tex. Crim. App. 2005)). Specifically, the Texas Court of Criminal Appeals has held that

> [b]y enacting Article 11.072, it is clear that the Legislature intended Article 11.072 to provide *the exclusive means by which the district courts may exercise their original habeas jurisdiction* under Article V, Section 8 of the Texas Constitution in cases involving an individual who is either serving a term of community supervision or who has completed a term of community supervision.

*Ex parte Villanueva*, 252 S.W.3d 391, 397 (Tex. Crim. App. 2008) (emphasis added); *see*

*also Doyle v. State*, 317 S.W.3d 471, 476 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) ("Article 11.072 establishes the procedures for an applicant to seek habeas corpus relief 'from an order or a judgment of conviction ordering community supervision.'" (Citation omitted.)).

In light of this, we believe the trial court erred in concluding that it could treat Herrera's motion to reconsider as a motion for new trial under rule 21 and that its jurisdiction over Herrera's initial application was extended as a result. Rule 21 does not apply to habeas proceedings—by its express terms, it governs only direct challenges to a defendant's conviction or punishment filed within thirty days of conviction or punishment—and in handling Herrera's habeas application, the trial court's jurisdiction was solely governed by article 11.072, which provides no motion-for-new-trial mechanism. *See Ex parte Villanueva*, 252 S.W.3d at 397; *see generally* TEX. CODE CRIM. PROC. ANN. art. 11.072.

The next question is whether Herrera's second application was a "subsequent" application under article 11.072. To that end, section 9(a) provides:

> If a subsequent application for a writ of habeas corpus is filed *after final disposition of an initial application* under this article, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application.

TEX. CODE CRIM. PROC. ANN. art. 11.072, § 9(a) (emphasis added). In the habeas context, the "'final disposition' of an initial writ must entail a disposition relating to the merits of all the claims raised." *Ex parte Torres*, 943 S.W.2d 469, 474 (Tex. Crim. App.

8

1997). Here, the trial court's March 8, 2011 order addressed all claims Herrera presented in his habeas application and ordered that "the application for writ of habeas corpus is, in all things, DENIED." The March 8 order, then, amounted to a "final disposition" of Herrera's initial application as it disposed of the merits of all the claims raised. As such, Herrera's March 10 amended application was, for purposes of our analysis, a "subsequent" application governed by article 11.072 and must have overcome the procedural bars in section 9(a) in order to be considered by the trial court.

## B. Did Herrera's Subsequent Application Overcome the Procedural Bar?

In order to be considered by the trial court, section 9(a) requires any subsequent application to contain "specific facts" establishing that the claims in the subsequent application "have not been and could not have been" presented in the initial application "because the factual or legal basis" for the subsequent claims was unavailable at the time the initial application was filed. TEX. CODE CRIM. PROC. ANN. art. 11.072, § 9(a). The State argues that Herrera's subsequent application presented neither a factual nor a legal basis that was unavailable at the time of his initial application. We agree.

### 1. New Factual Basis?

The factual basis for Herrera's initial application was that his 1987 trial counsel did not advise him of the potential immigration consequences of his guilty plea. Herrera supported his initial application with his affidavit, in which he averred that

> [a]fter speaking to [counsel] for less than thirty (30) minutes, he advised me to plea [sic] guilty because I was going to get probation. He did not ask me any questions regarding my immigration status. He did not advise me that the plea would affect my immigration status. He did not advise me that my plea would make me deportable or that I could or would be deported if I pled guilty.

Herrera's subsequent application was based on the same facts. The only addition to the

application was the inclusion of Herrera's mother's affidavit, in which she averred, in relevant part:

> Attorney Garcia did not ask my son Jose any questions regarding his immigration status. He only spoke with Jose for no more than five (5) minutes before he pled. Mr. Garcia did not advise my son that his guilty plea could and would result in his deportation. My son Jose did not know he could get deported by pleading guilty.

Section 9(c) provides that "a factual basis of a claim is unavailable" at the time of the initial application "if the factual basis was not ascertainable through the exercise of reasonable diligence on or before that date." *See id.* art. 11.072, § 9(c). Herrera's subsequent application provided no new facts that were not already provided in his initial application, and thus, it provided no factual basis that had not already been provided to the trial court. *See id.* art. 11.072, § 9(a). And even if we were to assume that Herrera's mother's affidavit did include new facts, Herrera did not demonstrate that his mother's affidavit was not obtainable, through due diligence, at the time he filed his initial application less than two months prior to his second application. *See id.* art. 11.072, § 9(c). As such, Herrera's subsequent application did not overcome the new-factual-basis procedural bar.

### 2. New Legal Basis?

The legal basis for Herrera's initial application was the United States Supreme Court's holding in *Padilla v. Kentucky. See* 130 S. Ct. at 1486 (defense counsel "must inform her client whether his plea carries a risk of deportation" to satisfy the requirements of the Sixth Amendment). In its conclusions of law, the trial court appeared to conclude that the First Court of Appeal's opinion in *State v. Golding* provided a new legal basis for

10

Herrera's second application.[3]  *See* 2011 Tex. App. LEXIS 3616, at *31-36.  We disagree that *Golding* provided a new legal basis not already provided in Herrera's initial application.

Section 9(b) provides that "a legal basis of a claim is unavailable" if "on or before the date" of the initial application "the legal basis was not recognized by and could not have been reasonably formulated from a final decision of the United States Supreme Court, a court of appeals of the United States, or a court of appellate jurisdiction of this state."  *See* TEX. CODE CRIM. PROC. ANN. art. 11.072, § 9(b).  In *Golding*, the First Court of Appeals held that *Padilla* applied retroactively to an ineffective assistance claim based on a 1994 guilty plea.  *Golding*, 2011 Tex. App. LEXIS 3616, at *31.  The court noted that the crime to which the defendant pleaded guilty made him mandatorily deportable and then affirmed the trial court's granting of habeas where the defendant's trial counsel did not advise the defendant that he would be deported if he pleaded guilty.  *Id.* at *32-35.  Even if *Golding* does involve a set of circumstances similar to Herrera's—i.e., a nearly twenty-year-old guilty plea—*Golding* does not create a new legal basis for Herrera's claim.  It is merely an application of *Padilla* to the set of facts in that case.  In other words, the legal basis of *Golding* is *Padilla*, and because *Padilla* was the legal basis of Herrera's initial application, his second application—even if we assume it was based on *Golding*—does not include a legal basis that was unavailable at the time of his first.  We

---

[3] We note that Herrera did not mention *State v. Golding* in his subsequent habeas application; the legal authority and arguments in his subsequent application—based on *Padilla v. Kentucky*—are identical to the legal authority and arguments in his initial application.  As such, Herrera did not allege "specific facts" showing that the legal basis for his subsequent application was unavailable at the time of his first.  *See* TEX. CODE CRIM. PROC. ANN. art. 11.072, § 9(a).  However, because the trial court apparently relied on it and in the interest of justice, we will address whether *Golding* does provide a new legal basis for the subsequent application.

also note that, unlike the defendant in *Golding*, Herrera's offense did not make him mandatorily deportable at the time he pleaded guilty.

### 3. Summary

Herrera's subsequent application included neither a factual nor legal basis that was unavailable at time of his initial application. We therefore conclude that the trial court erred in considering the subsequent application. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072, § 9(a). The State's first issue is sustained.

## IV. Conclusion

Because the trial court was without jurisdiction to consider Herrera's subsequent application, we vacate its March 20, 2011 order granting Herrera's writ of habeas corpus and dismiss the subsequent application for lack of jurisdiction.

NELDA V. RODRIGUEZ
Justice

Concurring Memorandum Opinion by Justice Benavides.

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
26th day of April, 2012.