IN THE COURT OF CRIMINAL APPEALS


OF TEXAS
 





NO. AP-75,254






EX PARTE CARL HENRY BLUE, Applicant








ON APPLICATION FOR A WRIT OF HABEAS CORPUS


IN CAUSE NO. 23293-272 FROM THE


272
ND DISTRICT COURT OF BRAZOS COUNTY






 Keller, P.J., filed a concurring opinion.



 The Court holds for the first time today that an applicant may overcome our statutory bar to
subsequent writ applications by means of a freestanding claim of actual innocence - in this case,
"actual innocence of the death penalty." Because this conclusion is warranted neither by our statute
nor by the federal caselaw underlying our statute, I concur in the Court's judgement.

Language of Article 11.071 §5


 Article 11.071, §5 prohibits the consideration of a subsequent application unless it meets one
of three exceptions. (1) The exception at issue here, sometimes referred to as involving "actual
innocence of the death penalty," requires a showing that:by clear and convincing evidence, but for a violation of the United States
Constitution no rational juror would have answered in the state's favor one or more
of the special issues that were submitted to the jury in the applicant's trial under
Article 37.071 or 37.0711. (2)


When construing a statute, we give effect to the plain meaning of the text, unless the statutory
language is ambiguous or the plain meaning leads to absurd results that the Legislature could not
possibly have intended. (3) The "but for" language in the statutory text here means that there must be
a causal connection between the constitutional violation and the jury's answers to the punishment
special issues. But the constitutional violation announced by Atkins occurs only when a mentally
retarded person is executed, (4) or phrased another way, only upon the execution of sentence. (5) Since
execution of sentence occurs after the jury has given its answers to the special issues, execution of
sentence cannot be a cause of those answers.

 The Court suggests that causation exists "once it has been definitively shown at trial that the
offender was in fact retarded" because then "the statutory special issues would not be submitted to
the jurors in the first place." (6) There are several problems with this reasoning. 

 First, as discussed above, a constitutional violation under Atkins does not occur at trial; it
occurs at the time a mentally retarded person is executed. So it is incorrect to say that a
constitutional violation would result in the special issues not being submitted. 

 Second, even if an Atkins violation could occur at trial, none of our cases require that the
determination regarding mental retardation be made before the jury delivers its answers to the
punishment special issues. In fact, the State is not required as part of its case to disprove mental
retardation, (7) and the matter does not have to be submitted to a jury. (8) Even if the mental retardation
determination were constitutionally required to be made at trial, nothing prohibits the trial court from
considering the question after the punishment verdict, i.e. after the jury has answered the special
issues. 

 Finally, and perhaps most importantly, a freestanding Atkins claim does not attack the
procedures for determining mental retardation but advances the substantive proposition that the
accused is in fact mentally retarded. We are not confronted with a claim that the trial court
constitutionally erred in failing to consider mental retardation at trial or in failing to give an
instruction on mental retardation to the jury, nor are we confronted with a claim that counsel was
ineffective in connection with advancing (or failing to advance) the mental retardation issue. The
question here is whether (based in part on evidence gathered after trial) the applicant is actually
mentally retarded. This is a freestanding "actual innocence" (of the death penalty) claim, which
logically arises after any jury verdict. (9) 

 The plain language of Article 11.071 §5(a)(3) requires showing a constitutional violation that
impacts the jury's punishment determination. In making a freestanding Atkins claim, it might be
argued that the jury's punishment determination is a constitutional violation. But if the jury's
punishment determination is the constitutional violation, then the jury's punishment determination
is not being impacted by a constitutional violation. More accurately, however, the constitutional
violation in a freestanding Atkins claim occurs after the jury's punishment determination, which of
course means the constitutional violation could not impact or be a cause of that determination.

Historical Underpinnings


 Even if we thought the language of the statute to be ambiguous, the historical backdrop of
the statute confirms my construction. In 1992, in Sawyer v. Whitley, the United States Supreme
Court articulated the federal "actual innocence of the death penalty" exception to the prohibition
against subsequent applications: "to show 'actual innocence' one must show by clear and convincing
evidence that, but for a constitutional error, no reasonable juror would have found the petitioner
eligible for the death penalty under the applicable state law." (10) Three years later, our Legislature
enacted the subsequent application provisions of §5, containing language that essentially parallels
the language in Sawyer. The author of our statute, Senator Montford, stated that the newly minted
subsequent application scheme, "adopts the abuse of the writ doctrine currently used in federal
practice which limits an inmate to a one time application for writ of habeas corpus except, and I
want to emphasize except, in exceptional circumstances." (11) Given the legislative history, the parallel
language is clearly no mere coincidence. The statutory provision at issue was obviously modeled
after the standard articulated in Sawyer.

 About six months after Sawyer, the Supreme Court decided Herrera v. Collins, where it
made clear that freestanding claims of actual innocence do not fall within the "actual innocence"
exceptions to the prohibition in the federal system against subsequent applications:

This is not to say that our habeas jurisprudence casts a blind eye toward innocence. 
In a series of cases culminating in Sawyer v. Whitley, decided last Term, we have
held that a petitioner otherwise subject to defenses of abusive or successive use of the
writ may have his federal constitutional claim considered on the merits if he makes 
a proper showing of actual innocence. This rule, or fundamental miscarriage of
justice exception, is grounded in the "equitable discretion" of habeas courts to see
that federal constitutional errors do not result in the incarceration of innocent
persons. But this body of our habeas jurisprudence makes clear that a claim of
"actual innocence" is not itself a constitutional claim, but instead a gateway through
which a habeas petitioner must pass to have his otherwise barred constitutional claim
considered on the merits. 


Petitioner in this case is simply not entitled to habeas relief based on the reasoning
of this line of cases. For he does not seek excusal of a procedural error so that he
may bring an independent constitutional claim challenging his conviction or
sentence, but rather argues that he is entitled to habeas relief because newly
discovered evidence shows that his conviction is factually incorrect. The
fundamental miscarriage of justice exception is available "only where the prisoner
supplements his constitutional claim with a colorable showing of factual innocence." 
We have never held that it extends to freestanding claims of actual innocence. 
Therefore, the exception is inapplicable here. (12)

 

Herrera was decided a little more than two years before the Texas scheme was enacted. Given the
Legislature's obvious awareness of Sawyer, we should conclude that the Legislature was also aware
of Herrera's explanation of the Sawyer standard, when it chose to model the provision at issue upon
that standard.

Conclusion


 Since Herrera, it is clear that a claim like applicant's would be barred under Supreme Court
caselaw. And, as the Court notes, applicant's claim would now be barred in federal court under
U.S.C. § 2244(b). In crafting the "actual innocence of the death penalty" exception to the general
prohibition against subsequent applications, our Legislature chose to draw a standard based upon
Supreme Court caselaw, and that standard simply does not embrace the claim made in this case. 

 I concur in the Court's decision to dismiss the application, but I do not join its opinion.

Date filed: March 7, 2007

Publish
1. See Tex. Code Crim. Proc., Art. 11.071, §5(a)(1)-(3).
2. Art. 11.071, §5(a)(3)(emphasis added).
3. Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).
4. Atkins v. Virginia, 536 U.S. 304, 321 (2002)("the Constitution 'places a substantive
restriction on the State's power to take the life' of a mentally retarded offender").
5. Id. at 317 ("we leave to the States the task of developing appropriate ways to enforce
the constitutional restriction upon its execution of sentences"). 
6. Court's op. at 17.
7. Ex parte Briseno, 135 S.W.3d 1, 10 (Tex. Crim. App. 2004).
8. Escamilla v. State, 143 S.W.3d 814, 828 (Tex. Crim. App. 2004), cert. denied, 544 U.S.
950 (2005).
9. See, for example, Ex parte Elizondo, 947 S.W.2d 202 (Tex. Crim. App. 1996). If this
type of claim were made at trial or on appeal, it would not be an "actual innocence" claim; it
would be a challenge to the sufficiency of the evidence.
10. 506 U.S. 333, 336 (1992).
11. Ex parte Torres, 943 S.W.2d 469, 473 (Tex. Crim. App. 1997)(quoting Senate floor
debate, S.B. 440, April 19, 1995, Tape 1, Side 2)(emphasis in Torres).
12. Herrera, 506 U.S. 390, 404-405 (1993)(emphasis in Herrera)(citations omitted).