IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0594-11






THE STATE OF TEXAS



v.



ROBERT JOSEPH SCHMITT, Appellee





ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIFTH COURT OF APPEALS


 COLLIN COUNTY





 Keasler, J., delivered the opinion of the Court in which Keller, P.J., and
Price, Johnson, Hervey, Cochran, and Alcala, JJ., joined. Womack, J.,
concurred. Meyers, J., dissented.


O P I N I O N 



 Robert Schmitt was convicted of two counts of aggravated sexual assault of a child
alleged to have occurred before an amendment to Penal Code § 3.03 permitted cumulative
sentencing. The trial judge nevertheless cumulated Schmitt's sentences. Schmitt challenged
the cumulation in a motion for judgment nunc pro tunc, but that procedural device corrects
only clerical errors. We affirm the court of appeals's judgment vacating the trial court's
order granting the judgment nunc pro tunc.

Facts


 In the fall of 1996, L.H. had been dealing with significant family issues. Not only
were her parents divorcing, but her mother was ill and had twice been rushed to the hospital
with seizures. Fearing that these issues were taking a toll on his thirteen-year-old daughter,
L.H.'s father contacted the school to request a counselor who could help. The school put the
family in touch with Schmitt, who began counseling L.H. in September 1996. 

 Schmitt, however, cared more about taking advantage of his young patient's emotional
state than about helping her through her troubles. Instead of counseling her, he initiated a
sexual relationship with her. Schmitt first attempted sexual intercourse with L.H. around
November 1996, but had to stop because it hurt her too much. Undeterred, Schmitt carried
on the relationship and later fully engaged in sexual intercourse with L.H. for the first time
around June 1997. Schmitt continued his assaults until the summer of 1998, totaling about
fifty such incidents. 

 After L.H.'s outcry to the police, the grand jury returned a two-count indictment
alleging that the sexual assaults occurred "on or about" June 9, 1997 and November 1, 1996. 
Both alleged dates preceded a 1997 amendment to Penal Code § 3.03, effective September
1, 1997, that first allowed a trial judge to cumulate sentences in such circumstances. (1) The
jury convicted Schmitt on both counts and assessed twenty years' imprisonment for each
offense. The trial judge sentenced Schmitt and ordered that the two terms run cumulatively
for a total of forty years' imprisonment.

Procedural History

 In 2003, Schmitt unsuccessfully appealed his conviction, raising twenty-three issues,
none of which challenged his cumulated sentence. (2) Pursuant to Code of Criminal Procedure
article 11.07, Schmitt then filed an initial habeas application in 2004 challenging his
conviction on four grounds unrelated to the trial judge's cumulation. We denied his initial
habeas application. (3) In 2009, Schmitt finally challenged his cumulated sentence for the first
time in a subsequent habeas application, arguing that the pre-amendment dates in both the
indictment and the judgments rendered his cumulated sentence void. We dismissed his
subsequent application under article 11.07, § 4. (4) 

 After these unsuccessful challenges, Schmitt filed a motion for judgment nunc pro
tunc with the trial court on February 8, 2010, claiming that the original trial judge had
committed a "clerical error" by cumulating his sentence. (5) The trial judge granted Schmitt's
motion and deemed the cumulated sentence "illegal and unauthorized by law." (6) The trial
judge then ordered Schmitt's sentences to run concurrently. On the State's appeal, the court
of appeals vacated the judgment nunc pro tunc and reinstated the original cumulated sentence
because "the trial court acted to change a judicial determination, rather than correct a clerical
error . . . ." (7) We agree. 

 Analysis


 The traditional purpose of a judgment nunc pro tunc is "to correctly reflect from the
records of the court a judgment actually made by it, but which for some reason was not
entered of record at the proper time." (8) A court cannot grant a judgment nunc pro tunc to
"change a court's records to reflect what it believes should have been done." (9) Therefore,
"there must be proof that the proposed judgment was actually rendered or pronounced at an
earlier time." (10) Moreover, a judgment nunc pro tunc may fix only clerical, not judicial,
errors. (11) The difference between the two, itself a question of law, "depends on the nature of
the error, not on who made the error." (12) Judicial errors result from "judicial reasoning." (13) 
If the trial judge must "exercise discretion or resolve conflicting legal claims," then he or she
has exercised judicial reasoning. (14) In contrast, a trial judge commits a clerical error if he or
she unintentionally fails to do some required, ministerial action "that is so obviously spelled
out that the judge would not have any discretion about whether or not to perform the duty." (15) 

 Our previous cases have defined the limited scope of a judgment nunc pro tunc. In
Ex parte Dopps, for example, we vacated a judgment nunc pro tunc that made a finding not
included in a plea agreement. (16) In its indictment, the State alleged that Dopps murdered a
man "by striking [him] about the head with a board." (17) Dopps pleaded no contest to voluntary
manslaughter and was sentenced to twenty years' imprisonment. (18) Five years later, the trial
judge issued a judgment nunc pro tunc that reformed the earlier judgment to include an
affirmative finding that the defendant had used a deadly weapon. (19) We, however, found no
such finding in the record and thus held that its absence, if in error, was a judicial error. (20) 
As there had been no finding for the trial judge to omit through clerical error, we held that
the trial court improperly issued a judgment nunc pro tunc to make one. (21) 

 In Ex parte Poe, however, we held that a judgment nunc pro tunc was properly entered
that merely recognized a jury's prior finding that a defendant used a deadly weapon during
the commission of a crime. (22) The jury had convicted Poe of killing a man with a handgun
but the trial judge did not properly enter the required affirmative finding on the use or
exhibition of a deadly weapon, entering instead merely: "Murder, to-wit a Handgun." (23) We
nevertheless affirmed the judgment nunc pro tunc because the jury found Poe guilty as
charged in the indictment, which alleged the use of a handgun. (24) Thus, the jury made the
required affirmative finding, and the trial judge committed a clerical error by failing to enter
it as required. (25) Accordingly, the subsequent judgment nunc pro tunc merely "reformed" the
judgment "so as to show the offense of which the accused was found guilty by a court and
jury." (26)

 Schmitt's sentences, as entered, accurately reflected those returned by the jury. The
jury found Schmitt guilty of the two indicted offenses and imposed two twenty-year
sentences. The trial judge announced two guilty verdicts and two twenty-year sentences and
accordingly entered two guilty verdicts and two twenty-year sentences into the record. No
judgment or sentence was entered or omitted through clerical error. The only additional step
taken by the trial judge was the cumulation of Schmitt's two twenty-year sentences. But
when the trial judge cumulated the sentences, he chose to exercise a power that he had
determined to be within his discretion--a determination that can only result from judicial
reasoning. (27) Even if we were to assume, without deciding, that the trial judge did not possess
that discretion and thus erred in cumulating the sentences--as Schmitt urges us to find--the
error would lie in imposing an illegal punishment rather than its entry into the judgment and
therefore cannot be characterized as clerical. (28) To the extent Schmitt's claim of error has
merit, the proper avenue of redress is either an appeal or an application for a writ of habeas
corpus, not a judgment nunc pro tunc. And Schmitt had the opportunity to timely assert this
claim of error through both avenues, but failed to do so.

 Schmitt, however, argues that because he may have exhausted those remedies,
possibly leaving him without any other adequate remedy at law, the judgment nunc pro tunc
was properly entered. As support, Schmitt notes that in LaPorte v. State we held that an
"improper cumulation order is, in essence, a void sentence, and such error cannot be waived"
and "may be raised at any time." (29) But that language does not require us to expand the
narrow scope of a judgment nunc pro tunc to remedy what we have assumed, without
deciding, to be an illegal sentence. In LaPorte, we addressed the issue of failing to properly
object to an illegal sentence at trial, not the scope of a judgment nunc pro tunc. (30) Thus, our
statements in LaPorte do not support Schmitt's claim that a judgment nunc pro tunc is the
proper vehicle for his challenge. 

 Even more, were we to adopt Schmitt's broad interpretation of LaPorte, we would
elevate the judgment nunc pro tunc to a far-reaching procedural device that would subsume
much of the traditional appellate process and eviscerate article 11.07, § 4. Indeed, before he
filed his motion for judgment nunc pro tunc, Schmitt first challenged the cumulation in his
subsequent habeas application. It was only after we dismissed that application under article
11.07, § 4 that Schmitt filed his motion for judgment nunc pro tunc. But it would be quite
absurd if Schmitt's failure to comply with article 11.07, § 4 created a new avenue to attack
his sentence, by warping the traditional purpose of the judgment nunc pro tunc, that is so
contrary to the judicial interest in finality as codified in article 11.07, § 4 itself. (31) 

Conclusion


 The remedy sought--in essence, a re-sentencing--does not fall within the narrow
scope of a judgment nunc pro tunc, and we decline to widen it to accommodate Schmitt's
procedural oversight. The court of appeals's judgment is affirmed.

 

DATE DELIVERED: September 12, 2012

DO NOT PUBLISH
1. See Act of June 13, 1997, 75th Leg., R.S., ch. 667, § 2, 1997 Tex. Gen. Laws
2250, 2252-53.
2. Schmitt v. State, No. 12-01-00306-CR, 2003 WL 22411210 (Tex. App.--Tyler
Oct. 22, 2003, no pet.).
3. Ex parte Schmitt, No. WR-60,272-01 (Tex. Crim. App. Feb. 16, 2005) (denied
without written order).
4. Ex parte Schmitt, No. WR-60,272-02 (Tex. Crim. App. Oct. 2, 2009) (dismissed
without written order).
5. Appellee's Mot. for J. Nunc Pro Tunc 1.
6. State v. Schmitt, No. 296-81160-00 (296th Dist. Ct., Collin County, Tex. Mar. 1,
2010).
7. State v. Schmitt, No. 05-10-00337-CR, 2011 WL 1126044, at *2 (Tex.
App.--Dallas March 24, 2011).
8. Ex parte Poe, 751 S.W.2d 873, 876 (Tex. Crim App. 1988).
9. Collins v. State, 240 S.W.3d 925, 928 (Tex. Crim. App. 2007).
10. Ex parte Dopps, 723 S.W.2d 669, 670 (Tex. Crim. App. 1986) (per curiam).
11. Ex parte Poe, 751 S.W.2d at 876.
12. Smith v. State, 15 S.W.3d 294, 299 (Tex. App.--Dallas 2000, no pet.).
13. See Collins, 240 S.W.3d at 928.
14. Id. 
15. Id.
16. 723 S.W.2d at 671.
17. Id. at 670.
18. Id.
19. Id.
20. Id. at 670-71.
21. Id. at 671.
22. 751 S.W.2d at 877.
23. Id. at 875.
24. Id. at 875-76.
25. Id. at 876-77 ("Obviously, the primary difference between Dopps and the
situation before us is that a proper affirmative finding was made by the trier of fact in the
applicant's case.").
26. Id.
27. See Collins, 240 S.W.3d at 928-29.
28. See Rich, 194 S.W.3d at 512.
29. LaPorte v. State, 840 S.W.2d 412, 415 (Tex. Crim. App. 1992) (en banc).
30. Id. ("Consequently, a contemporaneous objection is not necessary to preserve
the error for appellate review.").
31. See Ex parte Torres, 943 S.W.2d 469, 474 (Tex. Crim. App. 1997) (citing
legislative history to hold that the intent of the provision is "to limit a convicted person to
'one bite at the apple'").