

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-76,914

### EX PARTE CLIFTON DEWAYNE HARVIN, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### IN CAUSE NO. 95-08-0076M-CR-A FROM THE
### 97th DISTRICT COURT OF MONTAGUE COUNTY

ALCALA, J., delivered the opinion of the Court in which KELLER, P.J., and PRICE, WOMACK, JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined. MEYERS, J., did not participate.

### O P I N I O N

Clifton Dewayne Harvin, applicant, filed an application for a writ of habeas corpus challenging his conviction for aggravated sexual assault of a child, for which he is currently serving a 60-year prison sentence. *See* TEX. CODE CRIM. PROC. art. 11.07. In addition to other complaints, applicant contends that his appellate counsel rendered ineffective assistance by failing to notify him that his conviction had been affirmed by the court of appeals. *See Harvin v. State*, No. 2-04-294-CR, 2005 Tex. App. LEXIS 8133, at *1 (Tex. App.—Fort

Worth Sept. 29, 2005, no pet.) (not designated for publication). Based on our review of the record, we conclude that appellate counsel failed to inform applicant of the court of appeals's disposition of his appeal and his right to file a pro se petition for discretionary review. We grant relief.

## I.  Background

In August 1994, applicant and his wife separated with the intent to divorce, and he began residing with his mother. His then six-year-old daughter, the complainant, lived with her mother (applicant's wife), two brothers, and a babysitter during the week, but the complainant began visiting applicant on the weekends. About three months later, the complainant told her babysitter that her genital area was hurting. According to the police report, when the babysitter inquired why it hurt, the complainant told her that her father was putting his hand inside her every time she saw him and that it occurred when he would bathe her.

The complainant was interviewed by two police officers and Darlene Taylor, a social worker with Children's Protective Services (CPS).  She told each of them that her father had penetrated her sexual organ with his hand on multiple occasions during their weekend visits. A medical examination of the complainant revealed physical evidence of penetration of her sexual organ.

After he was arrested for this offense and released on bond, applicant took the complainant with him to his pastor's office to record her statements.  The pastor and his wife

observed the complainant sit on applicant's lap and report that no one had touched her sexual organ. The complainant explained that her babysitter had told her to make the false allegation against applicant.

In January 1995, the complainant again spoke to Taylor after a judge ordered that the complainant be removed from applicant's custody. The complainant told Taylor that, during her recent time with applicant, he "told her he was sorry for putting his finger in her hole. He told her he was sorry for doing bad things to her and that he was in jail for doing bad things and probably would not see her for a long time."

In March 1995, applicant agreed to take a polygraph exam with an examiner chosen by the police officers investigating him. Because applicant declined to answer all of the questions, the examiner determined that he was not cooperating and terminated the exam. In his conversations with the investigating officers, however, applicant denied touching the complainant and explained that his wife and the babysitter had persuaded the complainant to falsely accuse him because of the impending divorce.

Although the State obtained an indictment against applicant, the grand jury had "considerable trouble as it considered the case," according to the prosecutor handling the case. The prosecutor believed that obtaining a conviction against applicant would be difficult because the complainant "has recanted on one occasion." In January 1996, the prosecutor wrote a letter to the complainant's mother explaining the difficulties of the case, in which he sought her approval to seek only a judgment of community supervision against applicant, and

she agreed.

Represented by hired counsel, applicant entered into a plea-bargain agreement with the State on April 16, 1996. Applicant pleaded no contest to aggravated sexual assault before the trial court and was placed on 10 years' deferred-adjudication community supervision. He entered into a stipulation of evidence with the State that indicated that the complainant would testify that applicant caused his finger to penetrate her sexual organ.

The transcription of the plea hearing includes questioning of applicant by his trial counsel, who had represented applicant for six months. Applicant stated that he had reviewed the transcript of the grand-jury testimony and "written reports in this case" and that he had "thoroughly gone over" those documents with counsel. Applicant testified that he and counsel had "looked at the case up and down quite extensively several different times." Applicant agreed that he understood that both the State's case and his case had "strengths and weaknesses." He confirmed that he and counsel had repeatedly talked about what could happen if he elected to take the case to trial. He testified that he understood that if he was convicted by a jury he would be eligible only to receive time in the penitentiary.[1] He described himself as "very satisfied" with counsel's representation. He acknowledged that his decision to plead no contest to the charge was his decision alone and that he was doing so voluntarily because he thought that it was in his daughter's and his best interests.

---

[1] The record from the plea proceedings reveals that counsel advised applicant of this fact during examination, and the trial court's findings of fact on initial remand indicate that applicant had a prior out-of-state felony conviction, precluding him from probation eligibility. *See* former TEX. CODE CRIM. PROC. art. 42.12, § 4(e) (Vernon 1995).

The record of the plea hearing also shows that applicant was questioned by the trial court. Applicant testified that he was not entering a plea out of fear, coercion, or persuasion and that he had not received any threats or promises. The court informed him that, pursuant to his plea of no contest, "the Court would find that the evidence substantiates your guilt." Applicant confirmed that he understood that. The court accepted the plea bargain and placed applicant on 10 years' deferred-adjudication community supervision.

Applicant successfully complied with the conditions of his community supervision for seven of the ten years that he was required to serve, but he continued to pursue evidence that he hoped would prove his innocence. During that time, applicant passed several polygraph examinations. On three different occasions in 1997 and 1998, three different polygraph examiners, one of whom was chosen by the State, determined that applicant was truthful in asserting that he had never touched the sexual organ of the complainant for sexual reasons. In 1998, applicant hired a different attorney to pursue his claim of innocence, who also later handled applicant's appeal. With the favorable polygraph results in hand, new counsel filed a motion for early termination of applicant's community supervision. The trial court held two hearings to consider the motion, but never ruled on it.

In 2003, the State filed a motion to adjudicate applicant's guilt. The attorney who had pursued applicant's innocence claim represented him in the adjudication proceedings. The trial court found the allegations true and sentenced applicant to 60 years in prison. That same attorney filed an appeal on applicant's behalf, but the court of appeals affirmed the

conviction. *Harvin*, 2005 Tex. App. LEXIS 8133, at *6.[2]

Applicant's two attorneys each had serious trouble with the State Bar of Texas. Applicant's trial counsel was disbarred in 2001 for mishandling cases a few years after he represented applicant. The State Bar issued a private reprimand to appellate counsel for mishandling applicant's appeal because he failed to advise applicant of the court of appeals's affirmance of his conviction.

In 2009, about four years after the court of appeals affirmed his conviction, applicant filed the present application for a writ of habeas corpus. This Court issued three remand orders requesting findings of fact from the trial court, including findings as to whether appellate counsel had timely notified applicant that his conviction had been affirmed on direct appeal.

After this Court's first remand to the trial court, a new judge and new prosecutor were assigned to the case. The trial judge who had presided over the plea and revocation proceedings recused himself, and a different judge was assigned to preside over the habeas

---

[2] A transcript of the hearing is included in both the appellate and writ records. The State presented evidence that applicant was in illegal possession of a small amount of marijuana and methamphetamine, which were recovered during the course of a traffic stop. Applicant's passenger was a 19-year-old female in illegal possession of a beer and a small amount of marijuana. Applicant had also failed to submit a urine sample that had been requested by his probation officer. After the trial court found the allegations true, defense counsel did not present any punishment evidence. Counsel then represented applicant on direct appeal and presented no arguments that the court of appeals could properly consider. The Second Court of Appeals affirmed applicant's conviction, but characterized the handling of applicant's case as "appalling" and suggested that he could obtain relief only through an application for a writ of habeas corpus. *Harvin v. State*, No. 2-04-294-CR, 2005 Tex. App. LEXIS 8133, at *1 (Tex. App.—Fort Worth Sept. 29, 2005, no pet.) (not designated for publication).

proceedings. Similarly, the original prosecutor recused himself, and a special prosecutor was assigned to handle the habeas proceedings. The habeas judge accepted affidavits, and appellate counsel filed an affidavit stating that, at the time he received notice that applicant's conviction had been affirmed on appeal, he sent a letter to applicant informing him accordingly. Based upon his review of those affidavits and the documents from the plea proceedings, the habeas judge found that appellate counsel timely notified applicant that his conviction had been affirmed. He concluded that applicant had received effective assistance of counsel and recommended denying relief. This Court again remanded to the trial court for additional findings, and the habeas judge conducted a live evidentiary hearing, which resulted in a different finding by the habeas judge as to appellate counsel's conduct.

At the hearing, appellate counsel maintained that he timely notified applicant of the affirmance of his conviction. The defense introduced evidence contradicting counsel's testimony, including applicant's testimony, prison records, and a letter from counsel indicating that he had not communicated with applicant after disposition of the appeal. Although he ultimately recommended denying relief with respect to applicant's other habeas claims,[3] the habeas judge found that appellate counsel failed to timely notify applicant of the

---

[3] In his application for a writ of habeas corpus, applicant presented many claims for relief, the merits of which we do not reach because they are subject to dismissal. For example, he complained that trial counsel was ineffective by failing to investigate the complainant's recantation. At a second hearing after third remand, however, the habeas judge heard testimony from the complainant that, before applicant pleaded no contest, she told applicant that her brother had sexually assaulted her and that applicant had not sexually assaulted her. The habeas judge's findings after that hearing stated that the complainant's recantations were not credible and were known to applicant when he pleaded no contest. Applicant's claims against appellate counsel alleging ineffective assistance

affirmance of his conviction.

## II.  Ineffective Assistance of Appellate Counsel

Applicant contends that appellate counsel rendered ineffective assistance by failing to inform him of the court of appeals's decision and that, but for that deficient performance, he would have filed a petition for discretionary review in this Court.

### A.  Applicable Law

In habeas corpus proceedings, this Court is the ultimate factfinder and the trial judge is the "original factfinder." *Ex parte Reed*, 271 S.W.3d 698, 727 (Tex. Crim. App. 2008). In most circumstances, this Court will defer to and accept a trial judge's findings of fact and conclusions of law when they are supported by the record. *Id*.

Appellate counsel has a duty to timely inform an appellant of the appellate court's decision and of his right to pursue discretionary review on his own. *Ex parte Crow*, 180 S.W.3d 135, 138 (Tex. Crim. App. 2005); *Ex parte Wilson*, 956 S.W.2d 25, 27 (Tex. Crim. App. 1997). Although there is no right to discretionary review, an appellant has a right to attempt to persuade this Court to exercise its discretion. *Ex parte Owens*, 206 S.W.3d 670, 674 (Tex. Crim. App. 2006).

The harm that occurs from counsel's failure to timely inform an appellant of his right

---

during the motion-to-adjudicate hearing are unclear as to how appellate attorney was ineffective, but we do not reach those claims because they are premature at this stage in the post-conviction proceedings. Because we dismiss them without prejudice, applicant may, if he chooses, redraft his claims to more clearly explain his contentions as to how each attorney was ineffective at the guilt, adjudication, and sentencing stages of the proceedings.

to file a petition for discretionary review is that the appellant is deprived of the benefit of the entire proceeding. *Id.* Therefore, to satisfy the prejudice prong in this context, an applicant need only show that he would have sought discretionary review had counsel advised him of his right to do so. *Id.* at 675; *Crow*, 180 S.W.3d at 138. If a trial court deems it credible, an applicant's allegation is sufficient to prove that he would have filed a petition for discretionary review had he been properly informed. *See Owens*, 206 S.W.3d at 676.

**B. Habeas Judge's Findings of Fact and Conclusions of Law Regarding Appellate Counsel's Failure to Notify Applicant Are Supported by the Record**

There was conflicting evidence as to whether appellate counsel notified applicant that his conviction had been affirmed on appeal. We conclude, however, that the record supports the habeas judge's finding that he did not. Although he provided live and written testimony that he had timely notified applicant, counsel was unable to produce any additional evidence in support of his testimony, and his testimony was contradicted by other evidence. Applicant provided evidence that his last communication with counsel was several weeks before the appellate court issued its opinion. The defense also introduced a letter that appellate counsel had written to State Bar of Texas personnel in which he indicated that, after applicant "was sentenced to prison, all communications regarding the Appeal were between [applicant]'s mother and myself and . . . [applicant]'s sisters." Similarly, prison mail logs revealed that the last correspondence between appellate counsel and applicant occurred prior to disposition of the direct appeal.

Furthermore, even assuming that counsel did inform applicant of the appellate court's

decision, he had an additional duty to inform applicant that he could pursue discretionary review on his own. *See Wilson*, 956 S.W.2d at 27. No evidence in the record shows that counsel advised him of that right. Because he was required to provide applicant both pieces of information and did not, he was ineffective. *See id.*

Applicant has also demonstrated that he was prejudiced by counsel's deficient performance. At the hearing, he confirmed that counsel's failure "prevented [him] from filing any other petitions for discretionary review or any other part of the appellate process after that." In his application, applicant further noted that he discovered the affirmance only through his own investigation "long after the deadline for filing a [petition for discretionary review] had passed." These statements adequately prove that he would have sought discretionary review had counsel timely informed him. *See Owens*, 206 S.W.3d at 676.

Because granting an out-of-time appeal restores the pendency of the direct appeal, any remaining substantive claims for relief in this application for a writ of habeas corpus become premature and are, therefore, subject to dismissal. *See Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (citing *Ex parte Brown*, 662 S.W.2d 3, 4 (Tex. Crim. App. 1983) (no habeas jurisdiction while direct appeal is pending)).

### III. Conclusion

We conclude that applicant has established that appellate counsel was ineffective and that, had applicant received effective representation, he would have sought discretionary review from this Court. We hold, therefore, that applicant is entitled to the opportunity to file

an out-of-time petition for discretionary review of the judgment of the Second Court of Appeals in Cause No. 02-04-294-CR that affirmed his conviction in Cause No. 95-08-0076M-CR-A from the 97th District Court of Montague County. Applicant shall file his petition for discretionary review with this Court within 30 days of the date on which this Court's mandate issues. We grant relief on this ground and dismiss applicant's other grounds without prejudice.

Delivered: May 15, 2013

Do Not Publish